CHARLIE BROWN CONSTRUCTION COMPANY, INC., A NEVADA CORPORATION, AND DELTA ELECTRIC COMPANY, INC., A NEVADA CORPORATION, APPELLANT, *v.* CITY OF BOULDER CITY, NEVADA, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENT.

No. 19159

August 21, 1990                                        797 P.2d 946

*Marquis, Haney & Aurbach, William T. Martin,* and *James P. McBride,* Las Vegas, for Appellants.

*B. G. Andrews,* City Attorney, Boulder City, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

The district court entered summary judgment against appellants Charlie Brown Construction Company, Inc. (Brown) and Delta Electric Company, Inc. (Delta), subcontractors on a subdivision project approved by respondent City of Boulder City (City) on six grounds. Two of the grounds consisted of a statutory construction favoring the City and a determination that the City was not unjustly enriched by the uncompensated labor and materials supplied by Brown and Delta for off-site improvements to the City's property.

Summary judgment is proper when it appears that there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Wiltsie v. Baby Grand Corp., 105 Nev. 291, 774 P.2d 432, 433 (1989). The facts here are not disputed. Appellants assert three claims for relief: (1) that they were third-party beneficiaries of the agreement between the City and Boulder Development, Inc. (Boulder Development) and that the City wrongfully released Boulder Development's cash deposit; (2) that the City was negligent in releasing funds deposited by the subdivider and in not requiring the subdivider to post a payment bond as mandated by City ordinance; and (3) that the City was unjustly enriched by the retention of and non-payment for their work.

Appellants' second contention is meritorious. Because we discern merit in the negligence claim, we reverse the summary judgment granted in favor of the City.

### Facts

The City approved a subdivision project submitted by the subdivider, Boulder Development. Brown and Delta entered into subcontracts with the general contractor for construction of the off-site improvements on the project. Brown and Delta completed

the work but were unable to obtain full payment because of the bankruptcy of the general contractor and subdivider. The two subcontractors were also frustrated in securing payment through liens because of a trustee's sale facilitated by the construction lender's priority deed of trust. Brown and Delta received $92,587.96 and $49,372.10 less respectively, than they were entitled to receive for the labor and materials they provided.

In approving the subdivision, the City required the subdivider to post a cash deposit in lieu of a bond to insure performance of the off-site construction, but it did not require the filing of a payment bond to insure payment to the subcontractors. The City subsequently accepted title to the off-site improvements and released the cash deposit. Brown and Delta, after exhausting all other possible avenues for payment, filed this suit against the City.

### Third-Party Beneficiary Claims

The trial court correctly rejected the claim that appellants were third-party beneficiaries of the off-site improvement agreement between the City and Boulder Development. However, even if there were a third-party beneficiary theory upon which recovery could be based, it would afford no relief to appellants. Claims under a third-party beneficiary theory are necessarily contract claims. The presentment of claims requirement set out in NRS 268.020, as applied to contractual claims against municipalities, has been upheld by this court. L–M Architects, Inc. v. City of Sparks, 100 Nev. 334, 683 P.2d 11 (1984). There was no presentment to the Boulder City Council within the requisite six month time period and any contractually-based theories of recovery are therefore barred by the clear language of the statute. The district court correctly concluded that NRS 268.020 barred Brown and Delta's claims on this theory.

We have previously invalidated Nevada's statutory presentment restrictions upon a tort claimant's ability to sue. Turner v. Staggs, 89 Nev. 230, 235-236, 510 P.2d 879, 883, *cert. denied,* 414 U.S. 1079 (1973). Therefore, any tort claims appellants have must be considered on their merits. Because appellants' contract claims lack merit, we need not address them further.

### Unjust Enrichment Claims

Having determined that Brown's and Delta's negligence claims are meritorious, we deem it unnecessary to address their claims based upon theories of unjust enrichment.

## The Negligence Claims

Brown and Delta contend that the City was negligent in either prematurely releasing the cash deposit or failing to obtain a payment bond on their behalf as required by Boulder City Municipal Code § 11-36-12(A) and 11-36-5(K)(1) and (L)(1). A negligence claim framed in this manner appears to be an issue of first impression in this jurisdiction. The issue is, what cause of action, if any, was created by the City's failure to follow and enforce its own mandatory ordinance, the only apparent purpose of which was to protect subcontractors and enable them to obtain payment.

Boulder City Municipal Code § 11-36-12(A) provided:

> (A) Performance Bond or Deposit: If any required improvements have not been completed to the satisfaction of the City Engineer prior to the City Council approval of the final map, the subdivider shall file with the City Clerk a faithful performance bond in the amount deemed sufficient by the City Engineer to cover the cost of said improvements, engineering and inspection fees. *The subdivider shall also file a bond in an amount required by law on bonds for public construction, and by its terms insure labor and materials payment for labor performed and materials rendered under the terms of the improvement agreement. Such bond shall be executed by a surety company authorized to transact a surety business in the State of Nevada, and must be satisfactory to and be approved by the City Attorney as to form [emphasis added].* In lieu of said faithful performance bond, the subdivider may deposit cash with the City in the amount fixed, as aforementioned, by the City Engineer.

Boulder City Municipal Code § 11-36-5(K)(1) and (L)(1) provided:

> (K) Documents Required Prior to Approval of Final Map: The following shall be filed with the Planning Director prior to the final map being presented for action to the City Council:
>
> 1. Improvement Agreement and Performance Bond: The subdivider shall execute and file with the Planning Director an agreement between himself and Boulder City, specifying the period within which he shall complete all improvements and work in accordance with City specifications and standards to the satisfaction of the City Engineer. The subdivider shall also file with the Planning Director at the same time, a performance

bond and a labor and material bond as required by Section 11-36-12 of this Chapter. Said improvement agreement and performance bond shall be approved as to form by the City Attorney.

. . . .

(L)  Action by City Council:

1.  Within fifteen (15) days of the filing of the final map and other documents as required by this Chapter with the City Clerk, the City Council shall approve the map if it conforms with all applicable provisions of this Chapter and the Planning and Zoning Act of the State of Nevada. The time limit for approval of the map may be extended by mutual written consent of the City Council and the subdivider.

The successor provisions to these ordinances appear in a substantially similar form in BCMC § 11-39-12(A) and 11-39-5(L)(1) and (M). We see no merit in the negligent release of funds theory and decline to impose any liability on the City for its release of the performance deposit. However, the provisions of the ordinance which require a payment bond for labor and materials are clearly for the purpose of insuring payment to subcontractors who provide the labor and materials for the off-site improvements which ultimately inure to the ownership of the City.

Appellants correctly contend that BCMC § 11-36-12(A) required Boulder Development to file a payment bond covering labor and materials for the off-site improvements, and that the City was required to secure compliance with the provision before granting the necessary final map approval. Appellants contend that the City's negligence in failing to require a payment bond directly and proximately resulted in Boulder Development never obtaining such a bond. Consequently, when Boulder Development became insolvent and appellants' mechanics' liens were eliminated by the trustee's sale under the construction lender's deed of trust, appellants were unable to collect the amounts due them. Appellants conclude that if the City had required a payment bond, appellants would have recovered the money owed them. We agree.

It is elementary that statutes, or in this case municipal enactments, must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory. People of California v. Tahoe Regional Planning Agency, 766 F.2d 1308, 1314 (9th Cir. 1985); People v. Craft, 224 Cal.Rptr. 626, 629 (Cal. 1986). And, there is a presumption

that every word, phrase and provision in the enactment has meaning. Alaska Transp. Com'n v. Airpac, Inc., 685 P.2d 1248, 1253 (Alaska 1984).

Accordingly, this court has generally declined to use judicial construction to alter the meaning of clearly expressed enactments. In the case of In re Walter's Estate, 60 Nev. 172, 183-84, 104 P.2d 968, 973 (1940), we held, quoting from State v. Jepsen, 46 Nev. 193, 196, 209 P. 501, 502 (1922):

> Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself [citations omitted].

The ordinance at issue here seems clear to us. It specifies that "[t]he subdivider *shall* also *file a bond . . .* and by its terms *insure labor and materials payment* for labor performed and materials rendered under the terms of the improvement agreement" (emphasis supplied). The same ordinance, after requiring the filing of a labor and materials bond, further emphasizes its importance by requiring the City Attorney to approve the bond as to form. Moreover, and more importantly, the ordinance does not permit necessary final map approval without it having first been determined that the payment bond was filed as required. In pertinent part, the ordinance reads as follows:

> 1. Within fifteen (15) days of the filing of the final map *and other documents as required by this Chapter* with the City Clerk, the City Council shall approve the map if it conforms with all applicable provisions of this Chapter. . . .

A literal reading of BCMC 11-36-12(A) and 11-36-5(K)(1) and (L)(1) requires the City to obtain a payment bond (from a subdivider) for the protection of suppliers of labor and materials in an amount equal to bonds required by law for public construction.

In analyzing the intent of the City ordinance, it is clear that the City Council undertook to protect subcontractors doing off-site work from insolvent and irresponsible contractors. The record reveals that for many years, the City, despite its own ordinance, had only required performance bonds from subdividers in connection with the construction of off-site improvements. The City contends that its historical conduct thus negates any intent on its part in enacting the ordinance to protect subcontractors despite the plain language of the statute providing a protective mechanism for both the City and subcontractors. Heretofore, the City has apparently only enforced the provision which protected it and ignored the provision which protected subcontractors. We must

assume it has done so because substantial injury has not previously resulted from the City's disregard of its responsibility under the ordinance. Additionally, the City's observation that no other municipality or county requires a payment bond for subdivision improvements does not help it, as the City's ordinance clearly contains such a requirement.[1]

Given the City's obvious intent and the clear language of the City's ordinance, we decline to construe the payment bond provision of BCMC § 11-36-12(A) beyond the terms of its plain and ordinary meaning.[2] We hold that in this narrow context the ordinance created a self-imposed duty, which when breached, led to the specific harm which it was intended to prevent. The negligence claim, therefore, has merit. We conclude that BCMC § 11-36-12(A) and 11-36-5(K)(1) and (L)(1) required Boulder Development to post a payment bond for the protection of Brown and Delta and the City to withhold approval of the subdivision until such a bond was secured, approval by the City Attorney, and filed. The ordinance creates a duty the breach of which proximately caused the harm which Brown and Delta suffered.

Beyond the plain language of the City ordinance, which is controlling, there are sound policy reasons for enforcing the literal sense of the ordinance in question. First, the City is in a position, essentially without cost, to insist on a payment bond that will protect subcontractors such as appellants from financial loss. The transaction costs incurred by the City in securing such protection would be minimal and, in any event, could be passed

---

[1]All municipalities and counties in Nevada require a performance bond or its equivalent when the subdivider has yet to complete the required improvements at the time of the approval of the final map. We have no information on how many also require payment bonds.

[2]The dissent suggests that "an equally plausible" reading of BCMC § 11-36-12(A) is that the required payment bond applies only in the case of public construction. With due respect to the dissent, we note that the subject ordinance is applicable only to subdividers and subdivisions. It is common knowledge that subdivision construction entails work on private land owned by the subdivider. It does not involve or relate to "public construction." We therefore fail to see how any rule of statutory construction or judicial interpretation could be rationally invoked to transmute an ordinance that expressly applies to subdividers and subdivisions into an ordinance applicable to public construction.

We find it equally implausible that the City would interject a public construction requirement for a payment bond in an ordinance that has no application whatsoever to public construction. It seems clear to us that the reference to public construction in the provision at issue serves only as a basis for setting the amount of the payment bond.

on to subdividers and developers. Second, resort to mechanics' liens are usually unavailing where, as here, the project is encumbered by a deed of trust securing an acquisition and development or construction loan. Third, a contractor's bond supplied pursuant to NRS 624.270(4) is of minimal protection because the maximum bond required is only $50,000. Fourth, because the City pays no consideration for the off-site improvements conveyed to it and liens against City property are ineffective, we cannot fault the City for having voluntarily adopted measures to secure payment to subcontractors whose labor and materials inure to the City's benefit. Finally, the City is in a superior position to the subcontractor to insist on a bond without negative economic consequences.

We are aware of the general rule that municipalities or governmental agencies are not usually liable for failure to enforce ordinances or for dereliction of duties which benefit the public at large. Frye v. Clark County, 97 Nev. 632, 637 P.2d 1215 (1981); Bruttomesso v. Las Vegas Met. Police Dept., 95 Nev. 151, 591 P.2d 254 (1979); Commerce & Industry Ins. v. Toledo, 543 N.E.2d 1188 (Ohio 1989). However, the express language of the City's ordinance makes this case qualitatively more than a simple failure to enforce an ordinance. The ordinance requires a payment bond and prohibits final map approval until there has been full compliance with the ordinance. If the ordinance had merely required the subdivider to secure a bond, without obligating the City to assure compliance as a condition precedent to final approval, then the City's liability would be an unlikely prospect. But where, as here, the ordinance clearly requires the City to insure procurement of a payment bond, this is not failure to enforce but failure to perform a mandatory duty imposed on the City for the protection of specific entities whose work product will eventually become City property.

An exception to the general rule of non-liability for failure to enforce a statute is when there is some special relationship between the governmental agency and a particular individual or class of individuals. Frye, 97 Nev. at 634, 637 P.2d at 1216. Accord Platt v. District of Columbia, 467 A.2d 149 (D.C.App. 1983); O'Connor v. City of New York, 447 N.E.2d 33 (N.Y. 1983). The City has, perforce of its own ordinance, created a special relationship between the City, its agencies and subcontractors doing off-site work.

It cannot reasonably be contended that the City's labor and materials bond requirement benefitted anyone other than subcontractors performing off-site work. The ordinance imposed upon

the City a duty to require performance and payment bonds from subdividers before the City issues final approval to commence subdivision projects. The obvious purpose of the payment bond provision is to protect subcontractors and materialmen who participate in the off-site improvements. We believe the duty created by the ordinance imposes liability for its breach. There is support for this position in the case law of other jurisdictions.

In Brennen v. City of Eugene, 591 P.2d 719 (Or. 1979), the Oregon supreme court was faced with a similar question. In *Brennen*, the city's ordinance required it to refuse to issue a license to a taxi cab operator unless the operator could show that it had the required minimum amount of liability insurance. The city's agent issued a license to an operator that did not meet the requirement. A passenger was subsequently injured in an accident caused by the underinsured taxi operator and was unable to collect the full amount of the judgment against the operator. The court held that the city was liable for the difference between the amount of the operator's leviable assets and the amount of the judgment because its agent had violated a mandatory (as opposed to discretionary) requirement in the ordinance. Liability for this type of misfeasance is still the rule in Oregon. *Cf.* Salem School Dist. v. First State Ins. Co., 734 P.2d 369 (Or.App. 1987). (The *Salem* court assumed the school district's liability on facts analogous and went immediately to the issue of insurance coverage for the liability). The result and the reasoning of *Brennen* is sound, just and equitable and is very similar to the case before us.

*Brennen* is consistent with the California jurisprudence in this area. In California, however, governmental liability is governed by statute. Cal. Gov. Code § 815; State of California v. Superior Court, 197 Cal.Rptr. 914 (1984). The approach and cases in California are nevertheless illustrative of the principles we adopt here. California Government Code section 815.6, one of the statutory bases for imposing liability, provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against a risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

The leading California case interpreting this statute is Morris v. Marin County, 136 Cal.Rptr. 251 (Cal. 1977). In *Morris,* the court reviewed a provision of the California Labor Code (§ 380) providing that every county or city which required permits to build or perform construction "shall require that each applicant

for such permit have on file or file'' proof of adequate worker's compensation insurance. The plaintiff had worked for a builder who had been issued a permit to build without being required to show proof of worker's compensation insurance as mandated by the code provision. The builder did not have any coverage. Predictably, the plaintiff was injured while performing his employment duties and was unable to obtain either worker's compensation benefits or other satisfaction from the bankrupt builder. The *Morris* court held that the statute created a mandatory duty upon counties to obtain the required proof of insurance before issuing a permit and therefore the county could be held liable if it failed in its duty with respect to the requirement. Because the county did not comply with the mandate of the statute, it was liable for the plaintiff's injuries. Other California cases are in accord with *Morris. See* Young v. Inglewood, 154 Cal.Rptr. 724 (Cal.App. 1979); Elson v. Public Utilities Commission, 124 Cal.Rptr. 305 (Cal.App. 1975).

The parallels between the above cases and the instant case are evident. In fact, because the City imposed the obligation upon itself (rather than have it imposed by the State) the case for liability is arguably stronger. The City had an obligation to insure that a payment bond was posted before approval of the subdivision was granted. It did not do so and the subcontractors were unable to obtain payment. The City cannot now avoid liability by saying that it never requires such bonds or that it did not intend to enforce its own ordinance as written.[3]

### Effect of the Economic Loss Doctrine on the Ability to Recover in Negligence

The City claims that appellants only suffered economic damages and therefore the economic loss doctrine bars the negligence claim. We disagree.

This case is readily distinguishable from the economic loss

---

[3]We are aware that Brown and Delta could have insisted on proof of a payment bond before applying their labor and materials. However, subcontractors are in an inferior bargaining position relative to general contractors and are dependent on the latter's good will for employment. A reasonable subcontractor, rather than risking the prospect of antagonizing the general contractor, could assume that a payment bond had been provided inasmuch as it is a requirement for approval of the final map. Moreover, if the City is disinclined to provide the protection afforded by its own ordinance, it should repeal its obligations thereunder and thereby eliminate any basis for subcontractors relying on the City as a source of assistance in obtaining payment for their work.

cases we have decided. The Nevada cases discussing the economic loss rule are Central Bit Supply v. Waldrop Drilling, 102 Nev. 139, 717 P.2d 35 (1986), and Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 651 P.2d 637 (1982). Despite a somewhat misleading heading in the *Stern* decision, the rule is that absent privity of contract or injury to person or property, a plaintiff cannot recover in negligence for purely economic loss. However, it is clear from the context of the rule that it is directed at situations distinguishable from the case here.

We previously noted that "[t]he primary purpose of the rule is to shield a defendant from unlimited liability for all economic consequences of a negligent act, particularly in the commercial setting, and thus keep the risk of liability reasonably calculable." *Stern,* 98 Nev. at 411, 651 P.2d at 638. The rule is derived in part from the decision in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927), where the court said: "[A]s a general rule, at least, a tort to a person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with the other, unknown to the doer of the wrong." *See* Kingston Shipping Co., Inc. v. Roberts, 667 F.2d 34, 35 (1982). *Id.* at 309. The rule is aimed at third parties.

Both *Stern* and *Central Bit* are cases where individuals and entities who suffered damage to their economic expectancies because of allegedly defective products sought recovery from the parties participating in the supplying of the product.[4] As we explained in *Central Bit,* this rule is really the seller foreseeability rule for consequential damages first enunciated in Hadley v. Baxendale, 156 Eng. Rep. 145 (1854). Brown and Delta's injuries were not caused by a faulty product. They are not third parties to an injury or tort seeking recovery for derivative harm. Brown and Delta are directly injured parties seeking direct recovery from the tortfeasor. It is not consequential damages they seek but direct damages from the failure to perform a mandatory act. Our citation in *Stern* to The Restatement (Second) of Torts § 766 (1979) (which deals with the negligent interference with contractual relations) makes it clear that the prohibition does not extend to this circumstance. The policy behind the rule is not offended by holding the City liable.

Additionally, although appellants did not suffer property injury in the more traditional tort sense in which we generally view the

---

[4]In *Stern,* the plaintiffs were not even parties to the original transaction and were several steps removed from the design and construction of the hotel.

matter, it is not at all clear that they did not suffer an injury to property. They certainly suffered injury to their respective property interests in the amount of their unpaid claims when they performed labor and added materials to the City's land.

Also, given the context of the dispute, it would be disingenuous for the City to claim that appellants' injuries were unforeseeable. Manifestly, the ordinance was structured for the express purpose of preventing the very injuries sustained by Brown and Delta. Therefore, the City could easily foresee that its failure to utilize the machinery which it created to prevent such injuries could, in fact, substantially contribute to their occurrence. The injuries and their extent are clearly foreseeable. As the purely economic recovery rule is bound up in foreseeability, the rule enunciated in *Stern* and *Central Bit* is simply inapplicable to this case.

## Conclusion

For the reasons noted above, we reverse the summary judgment entered below and direct that summary judgment be entered in favor of Brown and Delta as to both liability and damages unless the amount of damage is factually disputed, in which case the district court shall require a trial limited to the issue of damages.

SPRINGER and MOWBRAY, JJ., concur.

YOUNG, C. J., with whom ROSE, J., concurs, dissenting:

The majority opinion will enjoy limited value as a precedent unless Boulder City with unexampled largesse desires to continue paying for labor and materials used on private property where suppliers have not, pursuant to common practice, protected themselves by liens or bonds from subdividers or contractors. The record is devoid of any evidence that the ordinance was ever interpreted by the City or anyone else as set forth by the majority. In fact, an affidavit indicated that for many years the ordinance had been interpreted as not to require such bonds. Now the City is being told that because of its failure to properly interpret language which is ambiguous and uncertain, it must pay nearly $150,000.

There is no question that had Boulder City required a payment bond from the subdivider, appellants Brown and Delta would have recovered the money owed them by Boulder Development, the subdivider. However, the majority claim that (1) the City's ordinance created a self-imposed duty to withhold approval of the subdivision until a bond was submitted by the subdivider; and (2)

the approval of a subdivision without a payment bond automatically made the City liable. The majority assert in defense of their conclusion that the language of the ordinance is plain and unambiguous, and that no judicial construction is necessary. I cannot agree.

The ordinance in question provides that the City Council shall approve the subdivision map "[w]ithin fifteen (15) days of the filing of the final map and *other documents* as required by this Chapter with the City Clerk . . . ." BCMC § 11-36-5(L)(1) (emphasis added). The majority contend that "other documents" includes a payment bond. This is the linchpin for holding the city liable. I respectfully disagree with the reasoning of the majority opinion for reasons stated herein.

Nothing in the language of the ordinance expressly states that the City must withhold approval until a payment bond for labor and materials is filed. The only mandatory language pertinent to the City requires it to approve a final map "if it conforms with all applicable provisions . . . ." BCMC § 11-36-5(L)(1). This language does not prohibit the approval of a final map if it fails to conform with every possible interpretation of all applicable provisions.

The ordinance in question refers to bonds numerous times in the section on performance bond or deposit. Obviously, the draftsmen were familiar with the term and its use. To now hold without any evidence of the legislative intent, years after enactment and contrary to the City's interpretation and practice, that "other documents" has at all times included bonds, is a highly questionable predicate for liability.

The majority rely on BCMC § 11-36-12(A) which states in part: "The subdivider shall also file a bond in an amount required by law on bonds for public construction and by its terms insure labor and materials payment . . . ." The opinion argues that this language plainly and unambiguously shows that the subdivider was thereby obligated to file the payment bond even though no public construction was involved. In my view, however, an equally plausible reading of the ordinance requires the subdivider to file a payment bond *only in the case of public construction* where liens cannot be asserted.

Reason supports this interpretation. The City obviously has an interest in having a performance bond so that the promised improvements are completed, but no reason to intrude in what is essentially a private relationship between the subdivider and those supplying labor and materials. Indeed, in many cases, payment bonds may already have been provided to some or all vendors by the general contractor or subdivider. The majority

opinion in its stern, it-is-required-by-the-ordinance approach would require yet another such bond.

The leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent, when ascertained, will prevail over the literal sense. Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 637, 503 P.2d 457, 458 (1972). The court will give meaning to an ambiguous or uncertain ordinance by examining its context and by considering the reason or spirit of the law. City of Las Vegas v. Macchiaverna, 99 Nev. 256, 258, 661 P.2d 879, 880 (1983).

Nevada uses mechanics' liens and contractors' bonds to protect subcontractors from the risk of nonpayment for their labor and materials. The contractors' bond statutes require a public body to ensure that contractors furnish both performance and payment bonds for public construction when the cost exceeds $20,000.00. NRS 339.025(1). Thus, the payment bond required for public works is in lieu of lien statutes. It protects those who supply labor and materials for public buildings. Flaugh v. Empire Clay Products, Inc., 402 P.2d 932, 933 (Colo. 1965). In the instant case, the off-site improvements were on private property and did not become City property until after completion and dedication to the City.

Mechanics' lien statutes, on the other hand, protect laborers and materialmen working on improvements of private property interests at the request of owners. NRS 108.221-.246. Because subdivision construction entails work on private land owned by the subdivider, the mechanics' lien statutes are available to protect those involved in subdivision improvements. NRS 108.224. Brown and Delta could have insisted on a bond from the subdivider insuring payment for labor and materials but apparently chose not to do so. Instead they filed mechanics' liens against the subdivider, Boulder Development. Unfortunately, the construction lender's deed of trust had priority, and foreclosure of the deed of trust extinguished appellants' liens. Legal action against Boulder Development was thwarted when the subdivider went bankrupt.

Considering the stated intent of Boulder City and the state statutory scheme, I decline to follow the majority's reading of the payment bond provision of BCMC § 11-36-12(A). *See* Breen v. Caesars Palace, 102 Nev. 79, 84, 715 P.2d 1070, 1073 (1986) (declining to read statute literally in light of statutory scheme). Rather, I construe the provision as applying only to public construction. I discern no reason why Boulder City would by ordinance impose an unnecessary and expensive duty on itself to ensure that those supplying labor and materials receive multiple layers of protection—including one from the City—for off-site

improvements on private property! In fact, for many years, the City had not required payment bonds under circumstances present in the instant case. Such a longstanding interpretation of the City's ordinance, by the officials charged with its enforcement, is entitled to great deference. *See* Hewlett-Packard Co. v. Dep't of Revenue, 749 P.2d 400, 406 (Colo. 1988).

Furthermore, Brown apparently began work about a month before the City accepted and recorded the final map. Delta did not even contract to do work until several months later. It seems absurd to expect, as the majority do, that the City would have to determine how much work had been done by Brown or others at the time the subdivision map was approved, or was to be done by Delta or others thereafter on subcontracts that may not have yet been executed, in order to establish accurate sums for payment bonds under BCMC § 11-36-12(A).

Moreover, what would happen if the subdivider for financial reasons was then unable to furnish a payment bond? Would the City be obliged to stop further work? Would the City be liable if work proceeded? Obviously, neither Delta nor Brown relied on such a bond. It was a matter of public knowledge that no bond had been filed when Brown began work or, after the map was recorded, when Delta commenced work.

If there were multiple subcontractors at various stages of work, under the majority's view the City must, apparently under penalty of becoming liable itself, identify all suppliers of labor and materials, compute the amount of each contract, ascertain what if anything has been paid, and then determine the cost of labor and materials remaining to be furnished and require a bond sufficient to pay potential claimants. If the bond proves inadequate because of unforeseen extras or misinformation, presumably under the majority opinion the City will then be liable for the bond deficiency. Arguably, under the reasoning in the majority opinion, the claimant would not even have to exhaust remedies against the subdivider or general contractor but could proceed directly against the City!

Such an interpretation of the ordinance is totally unrealistic. It would be unduly burdensome on the City with no corresponding benefit. Therefore, I conclude that BCMC § 11-36-12(A) does not require Boulder City to ensure that a payment bond was posted for the protection of Brown and Delta. Accordingly, I believe that no basis exists to support appellants' negligence claim.

Contrary to the majority's view, I submit that this case falls squarely within the general rule that municipalities are not usually liable for failure to enforce ordinances. *See, e.g.,* Frye v. Clark County, 97 Nev. 632, 637 P.2d 1215 (1981). Because I

disagree that the ordinance mandated the City to compel the subdivider to file a payment bond, or pay the claim if it did not, I believe this case is no more than a simple failure to enforce.

Moreover, I do not believe that the City, under its ordinance, assumed a special duty to those furnishing labor and materials for off-site work. In *Frye,* this court said that "[s]uch a duty may exist where, [sic] official conduct has created specific reliance on the part of individuals, or where the official negligence affirmatively causes the individual harm." *Id.* at 634, 637 P.2d at 1216 (citation omitted).

Here, neither Brown nor Delta in fact relied on the filing of a payment bond by the subdivider. They did nothing to verify the bond's existence and unsuccessfully sought payment by filing mechanics' liens. Can we now fairly hold Boulder City liable for approximately $150,000 because the "other document" language of the ordinance supposedly mandates a payment bond for the benefit of Brown and Delta? This is a particularly tenuous predicate in light of the fact that for many years the City had a widely known practice and policy of *not* requiring payment bonds under these circumstances. Presumably the City will now move to amend the ordinance and eliminate even the remotest possibility that it could ever again be called on to pay suppliers of labor and materials who because of their own oversight are unable to collect from those traditionally responsible.

For these reasons I conclude that the district court properly granted summary judgment in favor of Boulder City in all respects. Accordingly, I dissent.