CHARLES CALLOWAY and MARLENE IACOMETTI, on Behalf of Themselves and Other Property Owners of HUFFAKER HILLS UNITS 3 AND 4 HOMEOWNERS' ASSOCIATION, Appellants, v. CITY OF RENO, P & H CONSTRUCTION INC., CLARENCE POEHLAND, JOHN CARL CONSTRUCTION COMPANY, HIGHLAND CONSTRUCTION, INC., and OFFENHAUSER DEVELOPMENT COMPANY, Respondents.

CITY OF RENO, Cross-Appellant, v. HIGHLAND CONSTRUCTION, INC., OFFENHAUSER and OETJEN CONSTRUCTION, INC., OFFENHAUSER DEVELOPMENT COMPANY, SPARKS ROOFING AND SIDING SERVICE, INC., CHARLES CALLOWAY and MARLENE IACOMETTI on Behalf of Themselves and Other Property Owners of HUFFAKER HILLS UNITS 3 AND 4 HOMEOWNERS' ASSOCIATION, Cross-Respondents.

No. 25628

May 22, 1997                                        939 P.2d 1020

*Maddox & Saint-Aubin,* Reno, for Charles Calloway, Marlene Iacometti, and other Property Owners of Huffaker Hills Units 3 and 4 Homeowners' Association.

*Lemons, Grundy & Eisenberg,* Reno, for City of Reno.

*Beasley, Holden & Kern,* Reno, for P & H Construction, Clarence Poehland, and John Carl Construction Company.

*Erickson, Thorpe & Swainston, Ltd.* and *Thomas P. Beko,* Reno, for Highland Construction, Inc. and Offenhauser and Oetjen Construction, Inc.

*Haefner & Enzenberger,* Reno, for Offenhauser Development Company.

*Mortimer, Sourwine, Mousel & Sloane, Ltd.,* Reno, for Sparks Roofing and Siding Service, Inc.

*Cecilia L. Rosenauer,* Reno, for Amici Curiae Consulting Engineers Council of Nevada and Builders Association of Northern Nevada.

## OPINION

*Per Curiam:*

This appeal follows the complex construction defect litigation

that arose out of alleged defects in the Huffaker Hills Townhouse Development in Reno. Charles Calloway and Marlene Iacometti are class representatives, representing the class of 164 townhouse owners in Huffaker Hills who brought the underlying lawsuit ("appellants").

Appellants asserted that their homes were built with defective framing that was responsible for extensive water damage from rain and snow. As a result, appellants sought recovery based upon warranty and tort theories. On October 30, 1989, appellants filed their original complaint. That complaint named Offenhauser Development Corporation, Highland Construction, Inc. (collectively referred to as "Developer and Contractor"), and Sparks Roofing and Siding Service, Inc., all Nevada corporations, as defendants. Pursuant to NRCP 10(a), the complaint also named thirty fictitious individuals or entities as Doe defendants.

On October 15, 1991, appellants filed a third amended complaint that named the City of Reno ("the City") and various other subcontractors as defendants. The claim against the City was based upon negligent inspection of construction. Specifically, appellants alleged that the City approved the construction with actual knowledge of alleged defects.

On December 9, 1992, a fourth amended complaint was filed. That complaint named P & H Construction Inc. ("P & H"), Clarence Poehland ("Poehland"), and John Carl Construction Company ("Carl") as defendants (collectively referred to as "the Subcontractors"). The claims against the Subcontractors sounded in warranty and tort.

Appellants settled their claims against Developer and Contractor. As to the remaining defendants, the district court summarily dismissed sixty-five members of appellants' class based upon the statutes of repose. The district court summarily dismissed appellants' negligence and strict liability claims based upon the doctrine of pure economic loss.

In addition to the claims brought by appellants, defendants engaged in extensive third party litigation. The City cross-claimed against Developer and Contractor for indemnity and contribution. The district court summarily dismissed the City's cross-claim in conjunction with its approval of Developer and Contractor's settlement agreement with appellants.

In this appeal, appellants challenge the district court's interpretation and application of the statute of repose and the district court's use of the economic loss doctrine to preclude their negligence and strict liability claims. P & H and Poehland cross-appeal, challenging the district court's ruling regarding the relation back doctrine and its use with Doe defendants. Further,

the City cross-appeals against Developer and Contractor, challenging the district court's dismissal of the City's cross-claim against them.

We conclude that the district court's interpretation and application of the statute of repose and the district court's use of the economic loss doctrine to preclude appellants' negligence and strict liability claims were erroneous. With respect to the Subcontractors' and the City's cross-appeals, we conclude that the district court's rulings were proper.

## DISCUSSION

### 1. *Statute of repose*

Appellants filed their original complaint on October 30, 1989. In January 1993, the district court ruled that NRS 11.204 operated to bar all claims in the third amended complaint by homeowners whose certificates of occupancy were filed more than eight years before the filing of the original complaint. In February 1993, the district court used the Doe defendant pleading procedure to make the effective date on which the Subcontractors were named as defendants in this action the date of the original complaint. Then, in March 1993, the district court summarily dismissed the claims brought in the fourth amended complaint against the Subcontractors by the sixty-five plaintiffs whose homes were substantially completed before October 30, 1981.

No action may be brought more than eight years after substantial completion of construction against a person who provided construction services if the action is to recover damages for latent defects. NRS 11.204. This court reviewed the constitutionality of the current version of NRS 11.204 in Alsenz v. Twin Lakes Village, Inc., 108 Nev. 1117, 843 P.2d 834 (1992). This court stated that the running of a statute of repose is triggered not on the date of injury to a plaintiff, but on the date construction is substantially completed. *Id.* at 1120-23, 843 P.2d at 836-38. The *Alsenz* court then stated that NRS 11.204 could not be applied retroactively to bar claims involving construction that was substantially completed before the statute's enactment in 1983. *Id.*; *see also* Lotter v. Clark Co. Bd. of Commissioners, 106 Nev. 366, 793 P.2d 1320 (1990); Allstate Ins. Co. v. Furgerson, 104 Nev. 772, 766 P.2d 904 (1988).

On April 10, 1991, the legislature passed SB 105, expressing its clear intention that NRS 11.204 be applied retroactively to limit actions arising out of construction completed before 1983. *Alsenz*, 108 Nev. at 1121 n.1, 843 P.2d at 837 n.1. However, we

determined that SB 105 was unconstitutional because it did not provide a grace period within which to file an action that had accrued based upon the statute of limitation. *Id.* at 1121, 843 P.2d at 837; G and H Assocs. v. Ernest W. Hahn, Inc., 113 Nev. 265, 934 P.2d 229 (1997) (explaining distinction between statute of repose and statute of limitation).

In this case, the district court understood our holding in *Alsenz,* but attempted to predict whether the legislature would enact a grace period that would provide relief for the plaintiffs whose homes were completed before NRS 11.204 was enacted in 1983. The district court predicted that the legislature would not enact a grace period that would assist those plaintiffs, and then the district court summarily dismissed them from this action.

Our *Alsenz* decision clearly prohibits the use of SB 105 to apply NRS 11.204 retroactively because SB 105 did not provide a grace period for those with accrued rights to file actions to enforce those rights. At the time the district court summarily dismissed the actions brought by sixty-five homeowners based upon the statute of repose, the legislature had not yet provided a grace period. The district court was bound by our *Alsenz* decision and improperly varied from that mandate by attempting to predict what future actions the legislature might take. Such predictions were improper, and the district court's orders that summarily dismissed the actions brought by plaintiffs whose homes were completed before the enactment of NRS 11.204 in 1983 are hereby reversed. *See* McKay v. Board of Cty. Comm'r., 103 Nev. 490, 492, 746 P.2d 124, 125 (1987) (stating that it is not the business of the courts to fill legislative omissions).

## 2. *Relation back doctrine*

P & H and Poehland cross-appeal, arguing that the district court improperly applied the relation back doctrine in determining when appellants' action named P & H and Poehland as defendants. P & H and Poehland contend that appellants did not properly comply with NRCP 10(a) as described in Nurenberger Hercules-Werke v. Virostek, 107 Nev. 873, 822 P.2d 1100 (1991). *Nurenberger* explained that NRCP 10(a), the Doe defendant rule, should be applied liberally to allow plaintiffs to pursue redress from all wrongdoers. *Id.* at 878, 822 P.2d at 1103.

P & H and Poehland correctly point out that appellants sought to add them under the authority of NRCP 14(b), the rule governing third-party practice, not NRCP 10(a). However, appellants invoked NRCP 10(a) in their reply in support of the motion to add P & H and Poehland, and in a motion for reconsideration.

Accordingly, we conclude that appellants properly asserted the authority of NRCP 10(a).

P & H and Poehland also argue that they were prejudiced because appellants did not satisfy the promptness requirement articulated in *Nurenberger* because appellants knew that Poehland was a potential defendant nearly two years before Poehland was named as a defendant. However, Poehland was deposed shortly after his involvement was made apparent, which put Poehland on notice that he could be named. Therefore, Poehland did not suffer prejudice. Accordingly, we hold that the district court properly ruled on this issue.

### 3. Negligence claim against the Subcontractors

Appellants claim that the district court erroneously granted summary judgment for the Subcontractors based on the economic loss doctrine. The district court ruled that in order to recover in tort, appellants had to assert personal injuries or damages to property other than the homes themselves. Otherwise, according to the district court, plaintiffs were seeking recovery for pure economic loss which is prohibited by Nevada case law.

In Nat'l Union Fire Ins. v. Pratt and Whitney, 107 Nev. 535, 539, 815 P.2d 601, 603 (1991), a case involving litigation over damages to an airplane, we stated "that the economic loss doctrine was never intended to apply to construction projects." In dissent, however, Justice Rose stated that this statement was unnecessary for the analysis of the case before the court: "While this may be our decision when that issue is presented to us and carefully briefed, we should refrain from making such broad gratuitous legal statements until [the case is] properly before this court." *Id.* at 546-47, 815 P.2d at 603. Today, the case is properly before this court.

Under tort theories of negligence and strict liability, a plaintiff usually cannot recover economic loss without also proving personal injury or property damage. Central Bit Supply v. Waldrop Drilling, 102 Nev. 139, 717 P.2d 35 (1986); Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 651 P.2d 637 (1982). "The primary purpose of the rule is to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Stern,* 98 Nev. at 411, 651 P.2d at 638.

Despite the economic loss doctrine, strong policy consider-

ations support allowing owners of newly constructed homes to recover in tort for damages to their homes from entities that negligently construct their homes. *See* Cosmopolitan Homes, Inc. v. Weller, 663 P.2d 1041 (Colo. 1983); Oates v. Jag, Inc., 333 S.E.2d 222 (N.C. 1985); McMillan v. Brune-Harpenau-Torbeck Builders, Inc., 455 N.E.2d 1276 (Ohio 1983); Kennedy v. Columbia Lumber & Mfg. Co., 384 S.E.2d 730 (S.C. 1989). Nevada is facing a tremendous surge of new home construction, and many families are faced with the decision of buying a new home. The purchase of a home is often the most important economic decision these families will make. Such a family can already assert express and implied warranties to recover from a builder/vendor for defects in new construction. Radaker v. Scott, 109 Nev. 653, 660-61, 855 P.2d 1037, 1041-42 (1993). Too often, however, recovery against the builder/vendor is thwarted.

Builder/vendors can create a corporation to develop new construction and then disassemble the corporation when a project is completed or file bankruptcy before new homeowners discover, or can recover for, defects in construction. In this case, appellants faced an ensuing winter season that allegedly threatened further damage to their homes due to defendants' negligent construction. To avert such damage, appellants were forced to settle their claims with Developer and Contractor, the only parties against whom they could assert contract remedies, in order to obtain the funds needed to protect their homes from the coming storm season.

Thus, despite the existence of solvent subcontractors who are allegedly responsible for negligently framing appellants' homes, the pure economic loss rule would leave appellants with no way to recover from the Subcontractors for losses they did not recover from Developer and Contractor.

The Subcontractors argue that this inequitable result should not prompt the erosion of the pure economic loss doctrine because that doctrine is necessary to protect them from unforeseen, unlimited liability. The Subcontractors also urge this court to apply the economic loss doctrine because subcontractors are often unable to control the physical construction environment in which they perform their work.

We ruled in Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 508, 797 P.2d 946, 952 (1990), that the pure economic recovery rule is inapplicable in a case where a defendant could clearly foresee the type and extent of injury that could result from his or her negligent conduct. Our ruling did not offend the pure economic loss rule because defendant was not subject to unlimited, unforeseen liability.

In this case, the Subcontractors could clearly foresee that homeowners would live in the homes they framed. The Subcontractors could also foresee that if they negligently performed their framing work, structural damage and water intrusion could develop and force each homeowner to pay repair costs. Further, the costs of repairing the framing defects and water damage are reasonably calculable by a person in the trade. Therefore, we conclude that the Subcontractors need not be protected by the shield of the economic loss rule. Their liability is limited to the damage caused by their alleged negligent framing and is measured by the cost of repairing the framing defects and the resulting water damage. In fact, if the Subcontractors were negligent, they would be liable in contract for that same amount of damages to Developer and Contractor if Developer and Contractor were found liable to the plaintiffs based on implied warranties.

The Subcontractors assert a valid concern that they often cannot control their construction surroundings. A subcontractor does not control the trades which precede or follow it on the job site. *See* La Jolla Homeowners' v. Superior Court, 261 Cal. Rptr. 146 (Ct. App. 1989). While this fact militates against holding the Subcontractors strictly liable for their work, it does not follow that the Subcontractors cannot be held liable in negligence. Traditional tort theories are available for subcontractors to protect themselves from being held liable for the negligence of tradesmen who may perform work that affects the subcontractors' work. Our ruling today only allows recovery against negligent subcontractors. Subcontractors who perform their services reasonably under the circumstances may not be held liable jointly or severally for the negligence of other defendants.

Accordingly, we conclude that the district court improperly dismissed appellants' negligence claim against the Subcontractors. Subcontractors are not subject to unforeseeable, unlimited liability, and reasonable subcontractors will not be held jointly or severally liable for the negligent acts of other defendants who negligently perform work on the same project.

Our ruling today is limited. We do not intend to disturb the application of the economic loss doctrine to other tort scenarios, thereby opening the floodgates of litigation. Instead, our holding is limited to construction defect cases in which relief is sought by purchasers of newly constructed homes who cannot pursue traditional contract remedies against a developer or contractor. Further, in order for such a plaintiff to recover, that plaintiff must

present a good faith reason why relief cannot be sought in the traditional fashion, from the developer or contractor. Such reasons include that the developer or contractor no longer exists, is bankrupt, or was dismissed from the lawsuit due to bona fide pressures upon the plaintiff.

### 4. *Negligence claim against the City*

Governmental immunity protects the City from liability for negligence in the performance of inspections. NRS 41.033. The approval or disapproval of a building permit based on a building inspection is a discretionary function, and the City is immune from liability for negligently performing that function. Tahoe Village Homeowners v. Douglas Co., 106 Nev. 660, 663, 799 P.2d 556, 558 (1990). However, if a city conducts a building inspection and approves a building permit with knowledge that a defect in construction exists, the city is subject to liability. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985).

In *Charlie Brown,* we ruled that a city could be liable, despite the economic loss doctrine, for damages that result from the city's failure to perform a mandatory function that was designed to prevent the injury that occurred. In that case, the city could easily foresee the type and extent of damage that would result from its failure to perform a mandatory function. *Charlie Brown,* 106 Nev. at 508-09, 797 P.2d at 952.

Similarly, in this case, the City can be liable only if appellants prove that the City had actual knowledge of the alleged construction defects and failed to take the proper action as a result of that discovery. We conclude that if the City knew of the alleged defects, the City could reasonably foresee that the defects could injure appellants and the amount of damages could be reasonably calculable. Accordingly, as with the Subcontractors, we conclude that the City's actions do not merit the shield of the economic loss rule because the liability for those actions is not wholly unforeseeable or unlimited.

### 5. *Strict liability claims against the Subcontractors and the City*

The theory of strict products liability has been extended in a few states, particularly California, to hold builder/vendors strictly liable to new home purchasers and subsequent purchasers for defects in a newly constructed home. Elley v. Stephens, 104 Nev. 413, 418 n.2, 760 P.2d 768, 771 n.2 (1988); *see* Kreigler v.

Eichler Homes, Inc., 74 Cal. Rptr. 749 (Ct. App. 1969); Patutucci v. Drelich, 379 A.2d 297 (N.J. Super. Ct. 1977). Still, extending such liability to subcontractors and to city inspectors is another matter.

In *La Jolla Homeowners'*, 261 Cal. Rptr. at 146, a California appellate court explained the distinction between builder/vendors and subcontractors when applying the theory of strict products liability. Strict products liability is intended to protect consumers who are in no position to protect themselves from defective products and the manufacturers and suppliers of those products. *Id.* at 152. According to *La Jolla,* there is no meaningful distinction between the mass production of homes and the mass production of automobiles, and the overriding policy considerations in favor of strict products liability are equally present in each circumstance. *Id.* at 153. On the other hand, subcontractors do not control the entire construction of a product—the house—and then thrust that product into the stream of commerce. Based on this distinction, the *La Jolla* court refused to allow the plaintiffs to pursue a strict products liability action against a subcontractor.

We agree with the *La Jolla* reasoning. Further, we conclude that the *La Jolla* reasoning applies equally well to the question of whether a city inspector can be held strictly liable for defects in construction that were approved by that inspector. A city and its inspectors are not in the business of supplying or manufacturing products that are later thrust into the stream of commerce. Accordingly, we conclude that the district court properly dismissed appellants' strict liability claims against the Subcontractors and the City.

## 6. *The City's cross-claim*

The City filed cross-claims against Developer and Contractor for indemnity and contribution in early 1992. Then, in November 1992, the City filed a motion for summary judgment against appellants that was in response to appellants' third amended complaint. Appellants then filed a fourth amended complaint that, with respect to the City, was essentially identical to the third amended complaint. In January 1993, the district court granted the City summary judgment with respect to appellants' third amended complaint. Later, in June 1993, the district court granted the City summary judgment with respect to appellants' fourth amended complaint.

### A. *Mootness*

In May 1993, the district court granted Developer and Con-

tractor's motion for summary judgment against the City, thereby dismissing the City's cross-claim for indemnity and contribution. The City contends that when the district court granted Developer and Contractor summary judgment with respect to appellant's third amended complaint, the City's cross-claim was also dismissed because that cross-claim was made pursuant to the third amended complaint. The City argues that because the cross-claim was not refiled with respect to the fourth amended complaint, the subsequent order of the district court that summarily dismissed the cross-claim in favor of Developer and Contractor was moot. We disagree.

When a cross-claim is filed, the district court gains jurisdiction over that claim and retains jurisdiction until a final written order disposing of that cross-claim is issued. *See* Rust v. Clark Cty. School District, 103 Nev. 686, 747 P.2d 1380 (1987). Further, as in the case before us, the interest of judicial economy is served by the district court adjudicating a cross-claim in a case that is prone for an appeal. This court could reverse the district court's summary judgment against a plaintiff. Then, with the aid of the district court's reasoning on a cross-claim, this court could resolve the merits of the cross-claim. Otherwise, resolution of a cross-claim would have to be remanded to the district court for its initial determination which would likely be appealed again to this court. Clearly, judicial resources are wasted in the process. For these reasons, we conclude that the district court properly considered the merits of the City's cross-claim.

### B. *Express indemnity*

When Developer and Contractor approached the City to build the subject development, the City presented a form agreement entitled "Application for Building Permit." The application had blank areas for the parties to enter the name of the subject parcel, the price of the permit, and a work description. An indemnity clause, one of only three printed provisions on the application, was located immediately below the applicant's signature block. The indemnity clause stated that the applicant "agree[s] to . . . indemnify and keep harmless the City of Reno . . . against *all liabilities,* judgments, costs and expenses which may *anywise accrue* against the City of Reno in consequence of the granting of this permit." (Emphasis added.) Based on this provision, the City sought indemnity from Developer and Contractor for the negligent inspection claim that appellants filed against the City. Developer and Contractor contended, and the district court agreed, that the indemnity clause was an adhesion clause.

We reserve the classification of a contract clause as an adhesion clause for cases where one party has unfairly used its superior bargaining power to force the inclusion of an oppressive and unreasonable clause in a contract. *See* Obstetrics and Gynecologists v. Pepper, 101 Nev. 105, 107, 693 P.2d 1259, 1260-61 (1985); Cobb v. Snohomish County, 829 P.2d 169 (Wash. Ct. App. 1991). We decline to consider adhesion in this case, but affirm the district court's ruling on other grounds.

Indemnity clauses are strictly construed, particularly when the indemnitee claims that it should be indemnified against its own negligence. *See* Pickhover v. Smith's Management Corp., 771 P.2d 664, 666 (Utah 1989); Cities Service Co. v. Northern Production Co. Inc., 705 P.2d 321, 327-28 (Wyo. 1985). Ambiguous indemnity contracts are construed against the indemnitee, particularly when the indemnitee was the drafter of the agreement. Wyoming Johnson, Inc. v. Stag Industries, Inc., 662 P.2d 96, 101 (Wyo. 1983); *see* Calkins v. Lorain Division of Koehring Co., 613 P.2d 143, 145 (Wash. Ct. App. 1980); Carl T. Madsen, Inc. v. Babler Bros., Inc., 610 P.2d 958, 962 (Wash. Ct. App. 1980). In fact, when an indemnitee seeks indemnity for its own negligent acts based on an express indemnity clause, the indemnity clause must clearly and unequivocally express the indemnitor's assumption of liability for the negligent acts of the indemnitee. Keawe v. Hawaiian Elec. Co., Inc., 649 P.2d 1149, 1153 (Haw. 1982).

In this case, appellants alleged that the City was negligent when it inspected the subject property. However, due to the immunity protection for municipal entities in Nevada, the City cannot be found liable to appellants for negligence in the performance of an inspection. Tahoe Village Homeowners v. Douglas Co., 106 Nev. 660, 662-63, 799 P.2d 556, 558 (1990). Accordingly, the success of appellants' recovery theory against the City rests upon a determination that the City ignored a known defect when it approved the permits for appellants' homes. *Butler,* 101 Nev. at 450-51, 705 P.2d at 663. The City, therefore, sought indemnity from Developer and Contractor for any liability it may have for such "reckless" conduct.

The indemnity clause in the permit application is a general "hold harmless" clause. The clause does not expressly state whether the applicant indemnifies the City for the City's negligent, reckless or malicious conduct. Accordingly, we conclude

that holding Developer and Contractor liable as indemnitors for the City's negligent, reckless, or malicious conduct would be unjust. Mostyn v. Delaware L. & W.R. Co., 160 F.2d 15 (2d Cir. 1947) (indemnity for one's own negligent conduct follows only from an expression of such a purpose beyond any peradventure of doubt); Sweetman v. Strescon Industries, Inc., 389 A.2d 1319 (Del. 1978). Instead, we conclude that the provision in question was intended to hold the City harmless for any negligent conduct *by Developer and Contractor* which could subject the City to liability.

### C. *Implied indemnity*

The City argues that the doctrine of implied indemnity should be applied in this case. Implied indemnity shifts one joint tortfeasor's liability to another joint tortfeasor on the basis of some pre-existing legal or special relationship between the tortfeasors. *See* Black & Decker v. Essex Group, 105 Nev. 344, 775 P.2d 698 (1989). However, implied indemnity theories are not viable in the face of express indemnity agreements. Wyoming Johnson, Inc. v. Stag Industries, Inc., 662 P.2d 96, 101 (Wyo. 1983). When parties affirmatively deal with the question of indemnity in a written contract, it is fair to conclude that they intended what was expressed in their agreement, not that some common law rule should govern their rights and liabilities. Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902, 906-07 (9th Cir. 1950). In light of the presence of an indemnity agreement in this case, therefore, we conclude that the doctrine of implied indemnity is inapplicable.

### CONCLUSION

We conclude that the district court improperly interpreted and applied the statute of repose, and the district court improperly used the economic loss doctrine to preclude appellants' negligence claims. Further, we conclude that the City's claim for indemnity and contribution from Developer and Contractor lacks merit. Accordingly, we reverse the district court's orders in part and remand this case to the district court for further proceedings consistent with this opinion.[1]

---

[1]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.