JAMES R. OLSON AND CANDACE COLLINS OLSON, APPELLANTS, *v.* THOMAS AND CAROL RICHARD DBA AZTECH PLASTERING COMPANY, RESPONDENTS.

No. 40259

May 12, 2004

89 P.3d 31

*Rawlings Olson Cannon Gormley & Desruisseaux* and *Michael E. Stoberski,* Las Vegas, for Appellants.

*Brady, Vorwerck, Ryder & Caspino* and *Michael W. Caspino, Tracey L. Heinhold,* and *Charles W. Simmons,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This appeal presents an issue of first impression related to construction defects cases brought under Chapter 40 of the Nevada Revised Statutes. Based on our decision in *Calloway v. City of Reno,*[2] wherein this court held that a plaintiff may not allege a negligence claim for purely economic losses in a construction defects case, the district court dismissed appellants' negligence claim. We conclude that the district court erred because, unlike at common law, a plaintiff can pursue a negligence claim when suing under NRS Chapter 40.

### *FACTS*

In August 1994, James and Candace Olson (the Olsons) contracted with Structure Control, Inc. (SCI), through its president Donald W. Layton, to act as general contractor to construct a custom home for them in Las Vegas. The Olsons requested a three-coat light sand stucco finish, painted with elastomeric paint. SCI entered into a contract with Aztech Plastering Company (Aztech) for the stucco application.

In October 1995, SCI abandoned the construction of the Olsons' home after apparently running out of money. Thereafter, the Olsons confirmed the stucco contract with Aztech and hired Stanton Construction as a managing contractor.

Following Aztech's application of the stucco, the Olsons expressed their concern because the home's exterior did not appear to be a smooth sand finish. According to Mr. Olson, Aztech's foreman assured him that the exterior would look smooth after the elastomeric paint was applied. However, the Olsons claimed that even after the paint was applied, the home's exterior did not appear smooth.

To achieve the smooth finish the Olsons desired, Stanton Construction recommended that either the stucco be sandblasted

[2]116 Nev. 250, 993 P.2d 1259 (2000).

off and reapplied or a layer of polymer be applied to the outside of the home. The Olsons opted to apply the polymer because it was more economical and less intrusive. However, the Olsons claimed that the exterior still did not appear smooth, despite the application of the polymer.

In addition to the Olsons' aesthetic complaints relating to the stucco, they also complained that stucco fell off the home in various places. And, the Olsons discovered water intrusion when it rained—water seeped through some of the windows in the home. As a result, the Olsons hired construction expert Jerry Lawrence to investigate.

Lawrence observed that the weep holes—requisite exterior egress openings in the windows for accumulated rainwater—were in many instances covered with exterior stucco. Lawrence also observed that several areas of stucco detailing and finishing appeared to have been inappropriately applied, which he opined could have caused the present water intrusion and could lead to surface deterioration in the future. Lawrence opined that inferior stucco application caused the water intrusion, and he recommended that much of the stucco be removed and new stucco applied.

In October 1997, the Olsons made a Chapter 40 demand on SCI through a letter sent to Layton's and SCI's last-known addresses. Although the letter mentioned Aztech, Aztech was not directly sent a copy of the letter. In December 1997, after receiving no response from SCI, the Olsons filed a complaint against, among others, SCI and Aztech. The Olsons based their construction defects claims on Chapter 40 and common law, alleging negligence, breach of contract, breach of warranty, breach of the duty of good faith and fair dealing, and negligent misrepresentation.

During the trial, Aztech moved to dismiss the Olsons' negligence claim, arguing that *Calloway* restricts a plaintiff's right to sue for negligence in a construction defects cause of action. The Olsons countered that *Calloway* was inapplicable because it was decided based on facts that predated the Nevada Legislature's enactment of Chapter 40, which they argued permitted their negligence claim. The district court ruled that the Olsons' negligence claim was barred by *Calloway* and, thus, dismissed the claim.

At the close of the trial, the jury returned a unanimous verdict in favor of Aztech. Thereafter, the Olsons filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied the Olsons' motion. The Olsons now appeal from the judgment, including the dismissal of their negligence claim, and from the denial of their motion for a new trial.

## DISCUSSION

In *Calloway*, this court concluded that the economic loss doctrine applied to construction defects cases.[3] Accordingly, this court held that a negligence claim could not be maintained in a construction defects cause of action for purely economic losses where there is no personal injury or property damage other than to the structure itself.[4] Prior to this court's decision in *Calloway*, the Legislature enacted Chapter 40 to aid in resolving construction defects disputes between contractors and homeowners. But because the claims in *Calloway* predated the enactment of Chapter 40, we did not address whether a negligence claim could be brought under Chapter 40.

Our objective in construing Chapter 40 is to give effect to the Legislature's intent.[5] NRS 40.640 states that a contractor is liable for any construction defects resulting from his acts or omissions or the acts or omissions of his agents, employees, or subcontractors. This language in no way limits a homeowner's recovery to construction defects covered by a contract or warranty. Thus, we presume that the Legislature envisioned that Chapter 40 would provide more than just contractual remedies.

Additionally, NRS 40.635(2) clarifies that Chapter 40 prevails "over any conflicting law otherwise applicable to the claim or cause of action." Until our holding in *Calloway*, this court was consistently reluctant to apply the economic loss doctrine to construction defects cases.[6] This was the state of the law at the time the Legislature enacted Chapter 40 in 1995. Hence, it is reasonable to infer that the Legislature did not intend for the economic loss doctrine to preclude a homeowner from alleging a negligence claim in a construction defects cause of action initiated pursuant to Chapter 40. Consequently, we now conclude that, notwithstanding

---

[3]*Id.* at 261, 993 P.2d at 1267.

[4]*Id.* at 265, 993 P.2d at 1269.

[5]*See State v. Kopp,* 118 Nev. 199, 204, 43 P.3d 340, 343 (2002).

[6]*See Calloway v. City of Reno,* 113 Nev. 564, 571-72, 939 P.2d 1020, 1025 (1997) (concluding that despite the economic loss doctrine, strong policy considerations favor allowing a homeowner to recover damages for a negligently constructed home), *opinion withdrawn,* 114 Nev. 1157, 971 P.2d 1250 (1998); *Oak Grove Inv. v. Bell & Gossett Co.,* 99 Nev. 616, 625, 668 P.2d 1075, 1080-81 (1983) (concluding that the economic loss doctrine did not bar recovery for negligence when the appellant alleged that a defective plumbing and heating system caused water leakage throughout and damage to the appellant's apartment).

our holding in *Calloway,* a negligence claim can be alleged in a construction defects cause of action initiated under Chapter 40.

The Olsons argue that the district court should have granted their motion for a new trial based on the misconduct of Aztech's counsel. We have stated that granting a new trial based upon the prevailing party's misconduct does not require proof that the result of the trial would have been different absent counsel's misconduct.[7] However, we have also stated that for a new trial to be warranted, "the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict."[8] We agree that many of Aztech's counsel's remarks were improper, particularly informing the jury that his clients were not wealthy people.[9] Nonetheless, we conclude that the district court did not abuse its discretion in denying the Olsons' motion for a new trial, since it is not evident that the jury reached its verdict solely on the basis of passion and prejudice.[10]

Because the district court erred in dismissing the Olsons' negligence claim, we reverse and remand for further proceedings consistent with this opinion.

BECKER, J., dissenting:

I disagree with the majority opinion's conclusion that the Legislature, in enacting Chapter 40 of the Nevada Revised Statutes, intended to create a negligence cause of action against contractors and subcontractors for construction defects. In doing so, the majority ignores the plain language of the statutes as well as legislative history.

The majority asserts that NRS 40.640 establishes a statutory cause of action against a contractor for construction defects. The majority reaches this conclusion because a portion of the statute states that a contractor is liable for the acts or omissions of persons acting as the contractor's agents, such as an employee or subcontractor. However, when read in context with the remaining portions of the statute, it is clear that the statute simply reiterates existing law.

[7]*Barrett v. Baird,* 111 Nev. 1496, 1515, 908 P.2d 689, 702 (1995).

[8]*Standard Oil of California v. Perkins,* 347 F.2d 379, 388 (9th Cir. 1965), *quoted in Barrett,* 111 Nev. at 1515, 908 P.2d at 702.

[9]*See Canterino v. The Mirage Casino-Hotel,* 117 Nev. 19, 30, 16 P.3d 415, 422 (2001) (ROSE, J., concurring in part and dissenting in part) (observing that it is misconduct for an attorney to deliberately attempt to appeal to the economic prejudices of the jury).

[10]*See Krause Inc. v. Little,* 117 Nev. 929, 933, 34 P.3d 566, 569 (2001) (observing that this court will not reverse a district court's denial of a motion for a new trial absent a palpable abuse of discretion).

In a claim to recover damages resulting from a constructional defect, a contractor is liable for his acts or omissions or the acts or omissions of his agents, employees or subcontractors and is not liable for any damages caused by:

1. The acts or omissions of a person other than the contractor or his agent, employee or subcontractor;
2. The failure of a person other than the contractor or his agent, employee or subcontractor to take reasonable action to reduce the damages or maintain the residence;
3. Normal wear, tear or deterioration;
4. Normal shrinkage, swelling, expansion or settlement; or
5. Any constructional defect disclosed to an owner before his purchase of the residence, if the disclosure was provided in language that is understandable and was written in underlined and boldfaced type with capital letters.[1]

Nothing in the above language creates a cause of action.

I agree with the majority that the provisions of Chapter 40 do not limit a homeowner's recovery on construction defects to contract or warranty causes of action. This limitation stems from our decision in *Calloway v. City of Reno*[2] (*Calloway II*) and the application of the economic loss doctrine. Although I agree with *Calloway II* that a home is not a product for purposes of products liability and that the economic loss doctrine applies to residential construction, I do not agree with the conclusion that a home is an integrated unit when considering the economic loss doctrine. If it is not a product, then it is also not an integrated unit. However, *Calloway II* remains the law, and the fact that the composition of the court has changed is not a sufficient reason for reconsidering the issue. The majority acknowledges that the district court correctly dismissed the negligence cause of action pursuant to *Calloway II* and then proceeds to torture the statute to avoid *Calloway II*.

The majority sidesteps *Calloway II* by referencing NRS 40.635(2). NRS 40.635(2) only states that the statute controls over any conflicting law applicable to a cause of action. Since Chapter 40 does not discuss negligence as a cause of action, it does not conflict with *Calloway II* and *Calloway II* still controls. The majority claims that because the statute was enacted before *Calloway II* and did not conflict with our pre-*Calloway* case law, that the Legislature did not intend for the economic loss doctrine to apply to residential home construction. This is nothing more than pure speculation. Had the Legislature intended to exempt

---

[1]NRS 40.640.

[2]116 Nev. 250, 993 P.2d 1259 (2000).

residential construction defect cases from the economic loss doctrine, it would have done so. The Legislature did not address the issue in the statute, and its silence is an indication that it was leaving such issues to the courts to resolve, not a rejection of a specific legal defense.

When Chapter 40 was enacted, our case law on the application of the economic loss doctrine to residential home construction was unclear. As noted in *Calloway II,* some cases indicated, through dictum or holdings, that the doctrine would not apply. Others indicated it would.[3] The majority opinion assumes or infers that because our case law suggested the doctrine might not apply to residential construction defect cases and the Legislature is presumed to be aware of our case law, the Legislature did not intend to prevent negligence causes of action. But it is a stretch of logic to conclude that this same legislative silence created a cause of action or eliminated the economic loss doctrine as a defense to a construction defect claim. In fact, it flies in the face of the plain language of the remaining provisions of NRS 40.635. Sections 3 and 4 of the statute state just the opposite.

NRS 40.600 to 40.695, inclusive:

. . . .

3. Do not bar or limit any defense otherwise available except as otherwise provided in those sections.
4. Do not create a new theory upon which liability may be based.

Nothing in the provisions of NRS 40.600 to NRS 40.695 deal with negligence or the economic loss doctrine; thus, the Legislature neither created a cause of action nor eliminated a defense. These matters were left to the court to decide, as we did in *Calloway II.*

Even if the plain language of the statute could be ignored or deemed ambiguous, the legislative history of the act and its amendments does not support the majority's conclusion. The original version of the act contained the word "negligence." This was deleted to avoid any argument that the act was creating a cause of action.[4] Indeed, the testimony indicates that the act is an alternative dispute resolution process with penalties for failure to participate or bad faith participation, and incentives to participate through damage and fee provisions.[5]

---

[3]*Id.* at 262-67, 993 P.2d at 1267-70.

[4]Hearing on S.B. 395 Before the Senate Judiciary Comm., 68th Leg. 21-22 (Nev., June 15, 1995); Hearing on S.B. 395 Before the Assembly Comm. on Judiciary, 68th Leg. 6 (Nev., June 23, 1995).

[5]2 Journal S., 68th Leg. 1186-87 (Nev. 1995); Hearing on S.B. 395 Before the Assembly Comm. on Judiciary, 68th Leg. 5 (Nev., June 23, 1995).

In addition, the act was amended in 1997, after *Calloway I*[6] was issued and while the matter was pending rehearing. Although some individuals wished to address *Calloway I*, the Legislature declined to do so.[7] Instead, the Legislature added section 4 to NRS 40.635 to underscore that the act was a dispute resolution process and the court was free to create causes of action or eliminate defenses as it saw fit.[8] Finally, the Legislature has met twice since *Calloway II* was issued and has not amended Chapter 40 to address that opinion. This further indicates that the Legislature intends to leave these issues to the judicial system.

Given the plain language of the statutes and the legislative history, there is no support for the majority opinion's conclusion that Chapter 40 created a statutory negligence cause of action. Nor is there a need to creatively read the statutes to provide the homeowners with a remedy in this case. The homeowners sued under theories of breach of contract and warranty. These actions provide sufficient remedies to address allegations of construction defects from inferior workmanship. Common law imposes an implied warranty of workmanlike manner, which has been defined as a duty to perform to a reasonably skillful standard.[9] This is akin to a negligence standard, what would a reasonable contractor do in the circumstances, without the additional damages imposed under tort law that are inapplicable to contractual relations. Moreover, because contractors and subcontractors understand and accept these duties as a part of their business, they cannot claim surprise when they are sued for a failure to act in a workmanlike manner.

Arguments that warranty law might leave some homeowners without a remedy because of defenses such as lack of privity or warranty disclaimers are the reason that some courts have excepted residential construction from the economic loss doctrine. However, other courts have simply recognized that such defenses should be eliminated in contract law if their application would leave the homeowner stranded.[10] Of the two approaches, I favor the

---

[6]113 Nev. 564, 939 P.2d 1020 (1997), *reh'g granted and opinion vacated,* 114 Nev. 1157, 971 P.2d 1250 (1998).

[7]Hearing on S.B. 480 Before the Senate Judiciary Comm., 69th Leg. 3-6 (Nev., June 26, 1997); Hearing on S.B. 480 Before the Assembly Comm. on Judiciary, 69th Leg. 11-13 (Nev., July 3, 1997).

[8]*See* sources cited *supra* note 7.

[9]*See* William T. Little & Stephen Paxson, *The Implied Warranties of Good Workmanship and Habitability and the Builder's State of Repose,* 29 Dec. Housing Law 34 (1991); 3 National Institute of Construction Law, Inc., *Construction and Design Law* § 20.3a, at 27 (1998).

[10]*See, e.g., Minton v. Richards Group of Chicago,* 452 N.E.2d 835 (Ill. App. Ct. 1983); *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo. 1983); *Oates v. Jag, Inc.,* 333 S.E.2d 222 (N.C. 1985); *McMillan v. Brune-*

second and would vote in favor of eliminating privity or restricting warranty disclaimers in an appropriate case. It better preserves the distinction between tort and contract discussed in *Calloway II* than the majority's rewriting of Chapter 40.

A homeowner whose property suffers from construction defects should be able to sue the developer or general contractors for repairs and consequential damages. When the developer or general contractor no longer exist, are insolvent, or possess insufficient funds to pay damages, then a direct suit against the subcontractors should also be available to the homeowners. However, neither issue is presented in this case. The Olsons sued under warranty claims. Privity and disclaimers did not bar recovery. The jury was instructed and heard evidence that the stucco was not applied in a workmanlike manner. They also heard evidence to the contrary. While I do not agree with the result, there is substantial evidence to support the jury's finding that the stucco was not defective. I would affirm the judgment entered below.

---

*Harpenau-Torbeck Builders,* 455 N.E.2d 1276 (Ohio 1983); *Kennedy v. Columbia Lumber & Mfg. Co.,* 384 S.E.2d 730 (S.C. 1989).