HALCROW, INC., Petitioner, *v.* THE EIGHTH JUDICIAL
DISTRICT COURT OF THE STATE OF NEVADA, in and
for THE COUNTY OF CLARK; and THE HONORABLE
ELIZABETH GOFF GONZALEZ, District Judge, Re-
spondents, and PACIFIC COAST STEEL; and CENTURY
STEEL, INC., Real Parties in Interest.

No. 60194

June 27, 2013

302 P.3d 1148

*Backus Carranza & Burden* and *Leland Eugene Backus* and
*Shea A. Backus*, Las Vegas; *Lloyd, Gray, Whitehead & Monroe,
P.C.*, and *E. Britton Monroe* and *Burns L. Logan*, Birmingham,
Alabama, for Petitioner.

*Gordon & Rees, LLP*, and *Robert E. Schumacher*, Las Vegas;
*Procopio, Cory, Hargreaves & Savitch, LLP*, and *Scott R. Omo-
hundro, Craig A. Ramseyer*, and *Timothy E. Salter*, San Diego,
California, for Real Party in Interest Pacific Coast Steel.

*Hutchison & Steffen, LLC*, and *Michael K. Wall, James H.
Randall, L. Kristopher Rath*, and *Cynthia G. Milanowski*, Las
Vegas; *Koeller, Nebeker, Carlson & Haluck, LLP*, and *Megan K.
Dorsey* and *Robert C. Carlson*, Las Vegas, for Real Party in In-
terest Century Steel, Inc.

*Watt, Tieder, Hoffar & Fitzgerald, LLP*, and *David R. Johnson* and *Jared M. Sechrist*, Las Vegas, for Amicus Curiae Tishman Construction Corporation of Nevada.

Before the Court EN BANC.[1]

## OPINION

By the Court, SAITTA, J.:

In this opinion, we address whether the economic loss doctrine applies to bar a claim alleging negligent misrepresentation against a structural steel engineer on a commercial construction project. We exercise our discretion to review this petition for extraordinary writ relief, as our intervention will help resolve related future litigation by addressing an important legal issue, which our decision in *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 206 P.3d 81 (2009), left open. Ultimately, we conclude that the economic loss doctrine bars negligent misrepresentation claims against commercial construction design professionals where the recovery sought is solely for economic losses.

### *PROCEDURAL HISTORY AND FACTS*

This original proceeding stems from the construction of, and subsequent litigation regarding, the Harmon Tower (the Harmon) located within CityCenter, a mixed-use urban development in Las Vegas owned and developed in part by MGM Mirage Design Group. MGM retained an architectural firm and a general contractor, Perini Building Company, Inc., to assist in the project's development. The architectural firm retained petitioner Halcrow, Inc., to design the Harmon's structure, prepare drawings, and perform ongoing structural engineering services, including observations and inspections, throughout the construction of multiple structures in CityCenter. Perini hired real party in interest Century Steel, Inc., to provide the steel installation. Following the construction of a portion of the Harmon, Century assigned its assets, including the contract for the Harmon, to real party in interest Pacific Coast Steel (PCS).

All parties agree that Halcrow had no contract with PCS, Century, or Perini. Nonetheless, pursuant to PCS's and Century's contractual obligations to Perini, they were required to follow Halcrow's design and specifications for installing reinforcing steel in the Harmon. Problems arose when defects were discovered relating to the reinforcing steel's installation.

After construction was stopped on the Harmon, Perini filed a complaint against MGM for allegedly failing to make timely payments. MGM filed a counterclaim against Perini for the alleged reinforcing steel defects and other nonconforming work on the Har-

---

[1]THE HONORABLE KRISTINA PICKERING, Chief Justice, voluntarily recused herself from participation in the decision of this matter.

mon. Perini then filed a third-party complaint against Century and PCS, among others, asserting claims for contractual indemnity. Century and PCS in turn filed their own third- and fourth-party complaints against several entities, including Halcrow, alleging claims for negligence, equitable indemnity, and contribution and apportionment, and seeking declaratory relief.

Halcrow filed a motion to dismiss Century's and PCS's third- and fourth-party complaints for failure to state a claim on which relief can be granted, based on this court's holding in *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 206 P.3d 81 (2009). Halcrow argued that *Terracon* bars unintentional tort claims against design professionals in commercial construction projects when the claimant incurs purely economic losses. The district court granted Halcrow's motion and dismissed Century's and PCS's claims for negligence, indemnity, contribution, and declaratory relief.

PCS then sought leave to amend its third-party complaint in order to include a cause of action for negligent misrepresentation. Century followed suit and filed a motion for leave to amend its fourth-party complaint against Halcrow and others, to allege a claim for negligent misrepresentation. Halcrow filed an opposition to Century's and PCS's motions to amend their complaints, arguing that *Terracon* did not carve out an exception to the economic loss doctrine for negligent misrepresentation claims, and thus, PCS and Century should not be permitted to maintain such claims. Century and PCS on the other hand argued that Halcrow owed them a duty to act with reasonable care, pursuant to the Restatement (Second) of Torts section 552, in communicating information to Century and PCS about the steel installation. Specifically, they alleged that Halcrow failed to conduct timely inspections in accordance with its representations that inspections would take place and erroneously stated that on-site adjustments would alleviate errors in its plans. Century and PCS therefore contended that as a result of their foreseeable reliance on Halcrow's false representations regarding the steel installation inspection and correction process, Halcrow could be held liable for negligent misrepresentation.

Following a hearing, the district court granted the motions to amend but stayed the proceedings pending resolution of the legal issues by this court. This petition for extraordinary writ relief followed.

## DISCUSSION

### Writ of mandamus

A writ of mandamus is available to compel the performance of an act that the law requires as ''a duty resulting from an office,

trust or station." NRS 34.160. Mandamus relief may also be proper "to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). Mandamus is an extraordinary remedy, and we have full discretion to determine whether a petition will be considered. *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008). Writ relief will not be available when an adequate and speedy legal remedy exists. NRS 34.170. "Whether a future appeal is sufficiently adequate and speedy necessarily turns on the underlying proceedings' status, the types of issues raised in the writ petition, and whether a future appeal will permit this court to meaningfully review the issues presented." *D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 474-75, 168 P.3d 731, 736 (2007); *see also Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344-45, 950 P.2d 280, 281 (1997) (indicating that this court will consider a petition challenging an order denying motions to dismiss when an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition).

We exercise our discretion to consider this petition because the legal issue of whether a negligent misrepresentation tort claim may be maintained against a design professional in a commercial construction setting is one of first impression in Nevada and the issue has resulted in split decisions in Nevada state and federal district courts such that our clarification of this important issue now will promote sound judicial economy and administration. *D.R. Horton, Inc.*, 123 Nev. at 474-75, 168 P.3d at 736.

*The district court acted arbitrarily and capriciously in granting leave to amend in order to plead negligent misrepresentation*

NRCP 15(a) provides that leave to amend a complaint shall be "freely given when justice so requires." However, leave to amend should not be granted if the proposed amendment would be futile. *See Allum v. Valley Bank of Nev.*, 109 Nev. 280, 287, 849 P.2d 297, 302 (1993). A proposed amendment may be deemed futile if the plaintiff seeks to amend the complaint in order to plead an impermissible claim. *See Soebbing v. Carpet Barn, Inc.*, 109 Nev. 78, 84, 847 P.2d 731, 736 (1993).

*Negligent misrepresentation and the economic loss doctrine*

In *Terracon*, we held that the economic loss doctrine applied to preclude a plaintiff from asserting professional negligence claims against design professionals when the plaintiff sought to recover

purely economic losses in a dispute concerning commercial construction. Specifically, we concluded that:

> in a commercial property construction defect action in which the plaintiffs seek to recover purely economic losses through negligence-based claims, the economic loss doctrine applies to bar such claims against design professionals who have provided professional services in the commercial property development or improvement process.

125 Nev. at 80, 206 P.3d at 90. In so holding, we explained that the economic loss doctrine is intended to mark " 'the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others.' " *Id.* at 72-73, 206 P.3d at 86 (alteration in original) (quoting *Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44, 89 P.3d 31, 31-33 (2004)). We further explained that application of the doctrine protects parties from unlimited economic liability, which could result from negligent actions taken in commercial settings. *Id.* at 74, 206 P.3d at 86-87.

In this case, Halcrow contends that the clear and explicit holding in *Terracon* bars all negligence-based claims, including negligent misrepresentation. It further argues that numerous courts have refused to exempt negligent misrepresentation claims from the economic loss doctrine in cases of large commercial construction projects. In contrast, PCS and Century argue that *Terracon* left open the question of whether negligent misrepresentation may be an appropriate exception to the economic loss doctrine. Further, both PCS and Century argue that negligent misrepresentation should be adopted as an exception to the economic loss doctrine because it would not lead to the type of unlimited liability that the doctrine seeks to avoid. They maintain that the Restatement (Second) of Torts section 552 (1977) imposes on design professionals a duty of care, separate and apart from any duties arising from Halcrow's contract with the architectural firm, and because Halcrow breached that duty by negligently misrepresenting that it inspected and made corrections to the steel work, thus causing Century and PCS financial damages, they should be permitted to amend their complaints to assert negligent misrepresentation. We disagree.

Although *Terracon* recognized that exceptions to the economic loss doctrine exist, it answered only the specific question of whether the doctrine applied to preclude professional negligence claims against design professionals who provided services in the commercial property development and improvement process, when

the plaintiff sought purely economic losses. In this case, Century's and PCS's proposed amended complaints include a cause of action for negligent misrepresentation, based on Halcrow's alleged misrepresentations that it would inspect and make appropriate on-site adjustments to the steel installation, and on which representations Century and PCS allege they relied. *Terracon* did not address whether the economic loss doctrine applied to bar plaintiffs from asserting such claims, and we resolve that question now.

We have previously adopted section 552 of the Second Restatement of Torts in upholding a claim for negligent misrepresentation. That section provides:

> "One who, in the course of his business, profession or employment, or in any other [trans]action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 94 Nev. 131, 134, 575 P.2d 938, 940 (1978) (quoting Restatement (Second) of Torts § 552 (1977)). Section 552 provides that in situations where only pecuniary loss results, liability for negligent misrepresentation is not based on general duty rules, but instead, on a "restricted rule of liability." Restatement (Second) of Torts § 552 cmt. a (1977). Liability is only imposed on a party who has supplied false information, where that information is for the guidance of others and where the party knows that the information will be relied upon by a foreseeable class of persons. *Id.* cmt. b.

In *Terracon*, we left open the door for exceptions to the economic loss doctrine for negligent misrepresentation claims "in [a] certain categor[y] of cases when strong countervailing considerations weigh in favor of imposing liability." 125 Nev. at 73, 206 P.3d at 86. Liability is proper in cases where there is significant risk that "the law would not exert significant financial pressures to avoid such negligence." *Id.* at 76-77, 206 P.3d at 88. These types of cases encompass economic losses sustained, for example, as a result of defamation, intentionally caused harm, negligent misstatements about financial matters, and loss of consortium. *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 56 (1st Cir. 1985) (citing numerous exceptions to the economic loss doctrine that have been accepted by courts). However, in the context of commercial construction design professionals, negligent misrepresentation

claims do not fall into such a category because "contract law is better suited" for resolving such claims. *Terracon*, 125 Nev. at 77, 206 P.3d at 89. Further, in commercial construction situations, the highly interconnected network of contracts delineates each party's risks and liabilities in case of negligence, which in turn "exert significant financial pressures to avoid such negligence." *Id.* at 77, 206 P.3d at 88.

Additionally, complex construction contracts generally include provisions addressing economic losses. *See Terracon*, 125 Nev. at 78, 206 P.3d at 89. Therefore, the parties' "'disappointed economic expectations'" are better determined by looking to the parties' intentions expressed in their agreements. *Id.* at 79, 206 P.3d at 90 (quoting *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57-58 (Va. 1988)). This is further supported by the fact that design professionals supply plans, designs, and reports that are relied upon to create a tangible structure; the ultimate quality of the work can be judged against the contract. *See id.* at 79, 206 P.3d at 90; *see also Fireman's Fund Ins. Co. v. SEC Donohue Inc.*, 679 N.E.2d 1197, 1202 (Ill. 1997). The drawings, reports, and on-site instructions are "incidental to a tangible product." *Fireman's Fund Ins. Co.*, 679 N.E.2d at 1202; *see also Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 527-28 (D. Del. 2012). Thus, requiring parties that are not in direct privity with one another but involved in a network of interrelated contracts to rely upon that network of contracts ensures that all parties to a complex project have a remedy and maintains the important distinction between contract and tort law. *See Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44, 89 P.3d 31, 31-33 (2004).

In *Terracon*, we concluded that a design professional's duty to a party with whom it contracted is set forth in the contract, and "any duty breached arises from the contractual relationship *only*." 125 Nev. at 79, 206 P.3d at 90 (emphasis added). Based on the foregoing discussion, we see no reason to limit our conclusion in *Terracon* by imposing the extracontractual duty described in section 552 of the Second Restatement of Torts. *See Leis Family Ltd. P'ship v. Silversword Eng'g*, 273 P.3d 1218, 1224-25 (Haw. Ct. App. 2012); *2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 353 (Ill. 1990); *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 738 (Ind. 2010); *Fleischer v. Hellmuth, Obata & Kassabaum, Inc.*, 870 S.W.2d 832, 837 (Mo. Ct. App. 1993); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 993 (Wash. 1994).

Determining that design professionals have a separate and distinct duty, pursuant to section 552, to any subcontractor that must

rely on their plans would essentially allow any party to recast their barred negligence claim into a negligent misrepresentation claim. In the context of commercial construction projects, the evidence that would need to be presented in order to prove a negligent misrepresentation claim is almost identical to that which would be necessary in proving a claim for negligence. Allowing one and not the other would create a loophole in *Terracon*'s objective of foreclosing professional negligence claims against commercial construction design professionals and would, essentially, cause the economic loss doctrine to be nullified by negligent misrepresentation claims.

Here, PCS and Century, the subcontractors hired to install the steel, sought to plead negligent misrepresentation claims against Halcrow, the steel engineer. Halcrow was employed on the Harmon as a design professional and responsible for creating the plans and overseeing the installation of the Harmon's steel infrastructure. PCS and Century have never stated that they sought anything other than economic losses. Negligent misrepresentation is an unintentional tort and cannot form the basis of liability solely for economic damages in claims against commercial construction design professionals.[2] Consequently, PCS and Century cannot assert claims of negligent misrepresentation against Halcrow.[3] Therefore, leave to amend should not have been granted because the amendment to PCS's and Century's pleadings was futile. *See Allum v. Valley Bank of Nev.*, 109 Nev. 280, 287, 849 P.2d 297, 302 (1993); *Soebbing v. Carpet Barn, Inc.*, 109 Nev. 78, 84, 847 P.2d 731, 736 (1993).

## CONCLUSION

We conclude that, in commercial construction defect litigation, the economic loss doctrine applies to bar claims against design professionals for negligent misrepresentation where the damages alleged are purely economic.[4] Thus, the district court was com-

---

[2]Intentional torts are not barred by the economic loss doctrine. *See Terracon*, 125 Nev. at 72-73, 206 P.3d at 85-86. Thus, the economic loss doctrine does not preclude litigants from asserting claims of intentional misrepresentation.

[3]Our conclusions, however, do not bar PCS or Century's potential reliance on *Home Furniture, Inc. v. Brunzell Construction Co.*, 84 Nev. 309, 313-14, 440 P.2d 398, 401-02 (1968), and *United States v. Spearin*, 248 U.S. 132, 136 (1918) (providing that contractors cannot be liable for loss or damage resulting from defects in the plans and specifications, when the contractors simply followed the plans as provided).

[4]Because we determine that negligent misrepresentation and professional negligence claims cannot form a basis for liability, *Terracon*, 125 Nev. at 80, 206 P.3d at 90, Halcrow cannot be deemed a joint tortfeasor with PCS or Cen-

pelled to deny Century's and PCS's motions to amend their third- and fourth-party complaints to include claims for negligent misrepresentation against Halcrow. Accordingly, we grant Halcrow's petition for a writ of mandamus. The clerk of this court shall issue a writ of mandamus directing the district court to vacate its order granting PCS and Century leave to amend their third- and fourth-party complaints and the amended complaints.

GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS, and CHERRY, JJ., concur.

---

tury. Consequently, PCS and Century's equitable claims for contribution, apportionment, and indemnity necessarily fail. *See Black & Decker (U.S.), Inc. v. Essex Grp., Inc.*, 105 Nev. 344, 345, 775 P.2d 698, 699 (1989).