138 Nev., Advance Opinion 40

## IN THE SUPREME COURT OF THE STATE OF NEVADA

ANTHONY JOSEPH HARRIS,
Appellant,
vs.
THE STATE OF NEVADA; NEVADA
BOARD OF PRISON
COMMISSIONERS; THE STATE OF
NEVADA DEPARTMENT OF
CORRECTIONS; JAMES DZURENDA;
BRIAN WILLIAMS; ROMEO ARANAS;
MICHAEL MINEV; JEREMY BEAN;
JULIE MATOUSEK; MR. FALISZEK;
MRS. ENNIS; NAPHCARE INC.; BOB
FAULKNER; N. PERET; G. WORTHY;
G. MARTIN; AND G. BRYAN,
Respondents.

No. 81430



FILED

JUN 02 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from district court orders dismissing an inmate's civil-rights complaint. Eighth Judicial District Court, Clark County; Trevor L. Atkin, Judge.

*Reversed and remanded.*

Holland & Hart LLP and Joshua M. Halen and Matthew B. Hippler, Reno, for Appellant.

Aaron D. Ford, Attorney General, and Gregory L. Zunino, Deputy Solicitor General, Carson City, for Respondents.

22-17535

BEFORE THE SUPREME COURT, SILVER, CADISH, and PICKERING, JJ.

## OPINION

By the Court, CADISH, J.:

The district court dismissed appellant's civil rights complaint, finding deficiencies in the pleading as to one of the defendants and in the service of the pleading as to the remaining defendants. First, we consider the standard for sufficiency in pleading a deprivation-of-rights claim under 42 U.S.C. § 1983. Second, we consider the timing requirements for proper service of such a pleading on state officials or employees under NRCP 4.2(d)(2), which requires service on both the attorney general and on the individual official or employee, and in particular, whether NRCP 4.2(d)(6) provides additional time, beyond the generally applicable 120-day service period in NRCP 4(e)(1), to complete one of the two service requirements when the plaintiff timely completed the other requirement. Because we conclude that appellant alleged sufficient facts to state a claim for relief under 42 U.S.C. § 1983 against respondent Brian Williams based on an alleged deliberate indifference to serious medical needs and that NRCP 4.2(d)(6) gives appellant additional time to complete service on the remaining respondents, we reverse.

### FACTS AND PROCEDURAL HISTORY

Appellant Anthony Harris, an inmate in the custody of Nevada Department of Corrections (NDOC) at High Desert State Prison (HDSP), alleged in a civil-rights complaint that he began to experience "extreme chest pains" in early December 2018. He alerted a nurse at HDSP to the chest pains. The nurse, defendant Jane Doe, told Harris to "fill out a kite,

SUPREME COURT
OF
NEVADA

(O) 1947A

but did nothing else."[1] Harris's extreme chest pains persisted, and in early January 2019, he notified the same nurse of the continuing chest pains. She again told Harris to fill out a kite. Nothing came of the kites Harris completed. In late March 2019, Harris "suffered such extreme chest pains that" he fell "to his knees . . . in front of a different" nurse, respondent James Tolman. Tolman told Harris to drink water and "stay off his feet."

Harris filed an informal grievance the same day regarding the denial of medical treatment for the chest pains. A nurse at HDSP, respondent N. Peret, denied the informal grievance a little over two months later in early June 2019. Harris filed a first-level grievance the next day. Williams admits that NDOC's administrative regulations required him, as HDSP's warden, to review, investigate, and respond to Harris's first-level grievance, even though the regulations also permit him to use staff to develop the response. Approximately one month later, Harris received a denial of the first-level grievance signed by the director of nursing at HDSP, respondent Bob Faulkner. That same day, Harris filed a second-level grievance, which the medical director at HDSP, respondent Michael Miner, denied around two months later in early September 2019.

On June 14, 2019, Harris was taken to see a cardiologist. However, he was told on arrival that the cardiologist could not see him because the appointment had been scheduled for two days earlier. Officers at HDSP did not take Harris to see a cardiologist until over five weeks later, on July 23, 2019. Although the doctor instructed Harris to return in 30 days, officers did not take him to the cardiologist again until over two

---

[1]A kite is "a written request for services or other assistance within the prison." *Ybarra v. State*, 127 Nev. 47, 59 n.9, 247 P.3d 269, 277 n.9 (2011).

months later, on October 4, 2019. During these gaps in care, Harris continued to experience extreme chest pains that rendered him bedridden. In November 2019, Harris filed this lawsuit pro se against various officials and employees of NDOC, asserting a cause of action under 42 U.S.C. § 1983 for their alleged deliberate indifference to his serious medical needs.[2]

As relevant to this appeal, Harris directed the Carson City Sheriff to serve the complaint and summons on defendants Romeo Aranas, Michael Minev, Jeremy Bean, Julie Matousek, Mr. Faliszek, Mrs. Ennis, Bob Faulkner, N. Peret, G. Worthy, G. Martin, G. Bryan, James Tolman, Jane Doe 1, and NaphCare, Inc., all parties associated with NDOC (collectively, NDOC parties).[3] Harris stated in court filings that the Carson City Sheriff served the NDOC parties by way of the Office of the Attorney General's (OAG) authorized individual on December 13, 2019, and December 16, 2019.

In January 2020, respondent Williams brought a motion to dismiss for failure to state a claim under NRCP 12(b)(5), asserting that the complaint contained no facts that identified Williams by name, let alone alleged his personal involvement in Harris's medical care or lack thereof. Williams alternatively argued that he was entitled to qualified immunity because the complaint contained no facts to establish that he violated

---

[2]We omit discussion of the other parties and claims in Harris's complaint that are not at issue in this appeal.

[3]The record contains alternate spellings of Michael Minev's, Jeremy Bean's, and James Tolman's names: Michael Miner, Jeremy Dean, and James Tulman, respectively. Respondents, in their motions to dismiss, did not make any arguments specific to NaphCare. They similarly make no arguments as to NaphCare on appeal.

Harris's constitutional rights. Harris opposed, alleging additional facts to support Williams's notice of Harris's serious medical needs. Harris described the contents of the first-level grievance as stating that he "was experiencing a violation of [his] rights, both medical and [E]ighth [A]mendment, and that it was constituting cruel and unusual punishment." He also pointed to NDOC's regulations that require Williams, by virtue of his position as HDSP's warden, to respond to Harris's first-level grievance. Harris alleged that he attempted to speak about "this matter" with Williams in the prison's chapel sometime between July and September 2019, but that Williams rebuffed the conversation. Harris also requested to amend his complaint to add facts and a claim. Williams replied that the court could not consider the allegations that Williams reviewed the first-level grievance and that this review put Williams on notice of Harris's serious medical needs, as they were alleged for the first time in Harris's opposition. Williams also contended that his personal involvement in the review and denial of the grievance process did not "establish personal participation." Williams did not address Harris's request to amend the complaint.

At a hearing,[4] the district court granted the motion, dismissed the complaint with prejudice, and declined to allow Harris to amend the complaint. The court agreed that the complaint contained no allegations to establish Williams's personal participation in or awareness of the alleged constitutional violation. Moreover, the court concluded that a response to a

---

[4]Harris requested that the district court compel his telephonic appearance at the hearing on the motion to dismiss. Nothing in the record indicates that the district court ruled on the motion. However, Harris ultimately did not appear.

grievance does not, by itself, expose Williams to liability. Alternatively, the court concluded that Williams was entitled to qualified immunity because Harris failed to allege facts that Williams violated Harris's rights.[5] The district court did not provide any rationale for denying Harris's request to amend.

Thereafter, Harris moved the court to reconsider its order and permit him to amend his complaint. While Harris claimed to possess, among other items, "35+ evidence/exhibits spanning 66+ pages" to support his allegations, he did not describe the contents of the documents. Williams opposed, arguing that Harris failed to establish grounds for relief under NRCP 60(b), but Williams did not address Harris's request for leave to amend the complaint. The district court denied Harris's motion to reconsider the judgment and, alternatively, to amend his complaint, finding that Harris failed to establish grounds for relief under NRCP 60(b).

The remaining NDOC parties collectively filed a motion to dismiss pursuant to NRCP 4(e)(2) in June 2020, approximately five months after the latest date on which Harris alleged that he served all parties. They maintained that Harris failed to satisfy one of two requirements for the service of state officials or employees within the 120-day service period. Further, they asserted that Harris neither sought by motion to extend the service period nor showed good cause to grant such a motion. They argued,

---

[5]Although Harris challenges this decision on appeal, we do not need to reach whether the district court erred in concluding that Williams was entitled to qualified immunity because Williams concedes that "[i]t was premature for the [d]istrict [c]ourt to address qualified immunity" and that the district court placed the "burden" on Harris "to plead facts that negate qualified immunity."

therefore, that Harris's failure to properly serve them within the 120-day period provided in NRCP 4(e)(1) required dismissal of the complaint pursuant to NRCP 4(e)(2). The NDOC parties omitted any citation to or mention of NRCP 4.2(d)(6) (requiring "a reasonable time to cure" defects in service if preconditions are met). Harris opposed, arguing that he had perfected service within the 120-day period and that, nonetheless, good cause existed for an untimely request to extend the service period because the prejudice to the NDOC parties was mitigated by their actual knowledge of the lawsuit.

The district court granted the NDOC parties' motion and dismissed the complaint without prejudice. While the court found that Harris "attempted to effectuate service" on the NDOC parties, it concluded that Harris's failure to "personally serve any of the [NDOC parties] with a copy of the summons and complaint" within the service period warranted dismissal. Further, the court concluded that Harris neither sought an extension of time nor established good cause for his failure to do so. This appeal followed.

## DISCUSSION

*Harris properly pleaded a § 1983 claim against Williams*

We review de novo a dismissal for failure to state a claim upon which relief can be granted under NRCP 12(b)(5). *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). Factual allegations in the complaint are accepted as true, while inferences in the complaint are drawn in favor of the plaintiff. *Facklam v. HSBC Bank USA*, 133 Nev. 497, 498, 401 P.3d 1068, 1070 (2017). A plaintiff fails to state a claim for relief only "if it appears beyond a doubt that [he] could prove no

set of facts" that "if true . . . entitle [him] to relief."[6] *Buzz Stew,* 124 Nev. at 228, 181 P.3d at 672. Under our notice-pleading standard, we "liberally construe [the] pleadings" for "sufficient facts" that put the "defending party" on "adequate notice of the nature of the claim and relief sought." *W. States Constr., Inc. v. Michoff,* 108 Nev. 931, 936, 840 P.2d 1220, 1223 (1992). Although we have not adopted the "'less stringent'" pro se standard used in federal courts, *see Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)), our notice-pleading standard does not require the plaintiff to indicate a specific "legal theory" or use "precise legalese" to give notice to the defending party. *Liston v. Las Vegas Metro. Police Dep't,* 111 Nev. 1575, 1578-79, 908 P.2d 720, 723 (1995).

Williams argues that Harris's complaints of chest pains do not establish serious medical needs, and therefore, any "inattentive" response to those complaints by prison officials does not amount to deliberate indifference. Moreover, Williams asserts that Harris's complaint does not "make a direct connection between" Williams and the "alleged constitutional injury," as there are no allegations that Williams knew of Harris's medical needs or that prison officials denied Harris care. We disagree.

---

[6]Contrary to Williams's suggestion, our notice-pleading standard is not analogous to the federal plausibility standard for a motion to dismiss for failure to state a claim. We have not adopted the federal standard. *Garcia v. Prudential Ins. Co. of Am.,* 129 Nev. 15, 18 n.2, 293 P.3d 869, 871 n.2 (2013).

Section 1983, which vindicates federal constitutional rights, imposes liability where a defendant acts under color of state law to deprive the plaintiff of a constitutional right. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). The Eighth Amendment guarantees an inmate's right to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Liability for constitutionally inadequate medical care attaches if the defendant acted with deliberate indifference to the plaintiff's "serious medical needs," *id.* at 106, and such deliberate indifference caused harm to the plaintiff, *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). The deliberate-indifference standard, for Eighth Amendment purposes, comprises a subjective and an objective component "consistent with recklessness in . . . criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective component requires that "the official knows of and disregards an excessive risk to [the] inmate['s] health." *Id.* The objective component considers whether the risk to the inmate qualifies as sufficiently serious to warrant treatment, or in other words, sufficiently serious to constitute "unnecessary and wanton infliction of pain" in the absence of such treatment. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (quoting *Estelle*, 429 U.S. at 104), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

Addressing the objective component first, Harris's complaint alleges a set of facts that, if true, support a finding that he suffers or has suffered from ailments that constitute serious medical needs. Harris described chest pains so severe that at one point they caused him to fall on his knees in front of a nurse. While, as Williams points out, Harris did not allege specific symptoms of cardiac distress, he alleged that the chest pains persisted over months and appeared to worsen over that period such that

Supreme Court
of
Nevada

(O) 1947A

9

Harris became debilitated and bedridden by those pains. Harris also averred that the delay in the provision of treatment of the chest pains created a risk of heart attack, stroke, and even death. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (explaining that serious medical needs "exist[ ] if [the] failure to treat the injury or condition 'could result in further significant injury'" (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006))). Further, Harris alleged that the cardiologist he eventually saw on July 23, 2019, seven months after he initially complained of the chest pains, told Harris to return in 30 days, an indication that "a reasonable doctor" deemed these multiple incidents of chest pains as "worthy of comment or treatment." *See id.* (noting that indications of "serious medical need[s] include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain'" (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997))).

Turning to the subjective component second, the complaint also alleges a set of facts that, if true, support a finding of Williams's deliberate indifference. Harris described that he filed several grievances, one of which—the first-level grievance—the parties agree Williams was required by regulation to review, investigate, and answer, even though he was also permitted to utilize staff to develop such response. Harris was not required to cite NDOC regulations in his complaint in order for the allegations regarding the first-level grievance to implicate Williams's involvement in the constitutional violation. *See Liston*, 111 Nev. at 1578-79, 908 P.2d at

SUPREME COURT
OF
NEVADA

(O) 1947A

10

723. Moreover, the complaint's narrative of events permits the inference that the grievance made Williams aware of multiple instances where prison staff members ignored, or at least minimized, Harris's complaints of extreme chest pains and provided no contemporaneous treatment on any of those multiple occasions on which he complained over an approximately six-month period. By the time Harris received the denial of the first-level grievance, he had been taken to a cardiologist two days after the scheduled appointment, and still, no medical professional had treated or diagnosed the extreme chest pains. These allegations support that Williams knew of Harris's repeated complaints of extreme, debilitating chest pains over a six-month period and of prison staff's failure to respond to those complaints.

Faced with this knowledge, Williams denied, through staff, the grievance and made no efforts to ensure Harris received treatment, effectively ignoring persistent and credible complaints of inadequate care of serious medical needs. And, as noted already, Harris alleged that the denial of care both caused his condition to worsen, such that he became bedridden, and created a risk of further harm, such as a heart attack, stroke, and even death. Because the grievance alerted Williams to these issues, the denial of the grievance, coupled with the failure to act, constituted an affirmative decision to continue to deny or delay adequate treatment and to disregard an excessive risk of further injury to Harris.[7] Therefore, we conclude that

[7]Contrary to Williams's assertion, the foregoing shows that the complaint implicated Williams's personal participation because Harris alleged facts to infer Williams knew of Harris's need for medical attention, consciously failed to act, and thereby subjected Harris's health and safety to an excessive risk. See, e.g., Maxwell v. County of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (explaining that § 1983 does not permit vicarious

the district court erred by dismissing Harris's complaint on the basis that he failed to allege a set of facts that, if true, entitle him to relief against Williams under 42 U.S.C. § 1983 for Williams's deliberate indifference to Harris's serious medical needs.[8]

*Harris was entitled to additional time under NRCP 4.2(d)(6) to serve the state officials or employees*

While we generally review a dismissal based on the failure to timely serve process for an abuse of discretion, *Saavedra-Sandoval v. Wal-Mart Stores*, 126 Nev. 592, 595, 245 P.3d 1198, 1200 (2010), we review the

---

liability against a supervisor for the acts of his or her subordinates based only on his or her status as a supervisor, and therefore requiring personal involvement or participation in the constitutional violation); *Arnett v. Webster*, 658 F.3d 742, 755, 757 (7th Cir. 2011) (explaining that actions "satisf[y] the personal responsibility requirement" if the official "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye" to it (internal marks omitted) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995))).

[8]Even if Harris's complaint failed to meet the notice-pleading standard, we conclude that the district court abused its discretion in refusing to allow Harris leave to amend. *See Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 22, 23, 62 P.3d 720, 734, 735 (2003) (noting that leave to amend is favored, particularly where "the request . . . c[omes] at an early stage of the proceedings and in response to the motion to dismiss"). Harris's opposition papers included additional allegations that implicated Williams in the constitutional violation and suggested a proposed amendment would not have been futile, such as the fact that Williams rebuffed Harris's attempts to talk to Williams in the chapel about the lack of medical care, as well as the fact that Harris described the contents of the first-level grievance. *See Halcrow, Inc. v. Eighth Judicial Dist. Court*, 129 Nev. 394, 398, 302 P.3d 1148, 1152 (2013) (explaining that leave to amend is not warranted "if the proposed amendment would be futile," or in other words, the party's amendment presents no chance of survival past a motion to dismiss).



interpretation of the Nevada Rules of Civil Procedure de novo, *Vanguard Piping v. Eighth Judicial Dist. Court*, 129 Nev. 602, 607, 309 P.3d 1017, 1020 (2013). The rules "are subject to the same" interpretative methods "as statutes." *Id.* Accordingly, we begin with the text of the rule to determine its "plain meaning." *Id.* We enforce a rule's "clear and unambiguous" meaning without resorting to interpretative methods of statutory construction. *Id.*

Harris argues that the district court erroneously dismissed his complaint against the NDOC parties based on his failure to satisfy one of the two service requirements under NRCP 4.2(d)(2) within the 120 days provided in NRCP 4(e)(1), because NRCP 4.2(d)(6) provided him with additional time to cure the defect in service. We agree.

The interplay between NRCP 4(e) and NRCP 4.2(d) is an issue of first impression for this court. NRCP 4(e)(1) generally requires the plaintiff to serve the summons and copy of the complaint on the defendant according to one of the methods prescribed therein "no later than 120 days after the complaint is filed." The failure to serve within the 120-day period requires dismissal of the action "without prejudice" either on motion by the defendant or by "the court's own order to show cause." NRCP 4(e)(2). But the court "must extend the service period" on request by motion before the service period has expired if a party shows "good cause" to grant the extension. NRCP 4(e)(3). Further, even if the request to extend the period comes after its expiration, the court nevertheless "must extend the service period" so long as the party shows "good cause" to explain the failure to bring a timely motion and "good cause" to grant the extension. NRCP 4(e)(4).

NRCP 4.2 provides the various methods to serve a party within the state, depending on the categorization of the party. Specific to actions against former or current state officers and employees sued in their official or individual capacities, NRCP 4.2(d)(2) imposes a dual-service requirement. The plaintiff must deliver within the 120-day period "a copy of the summons and complaint" to both of the following persons:

> (A) the Attorney General, or a person designated by the Attorney General to receive service of process, at the Office of the Attorney General in Carson City; *and*

> (B) the current or former public officer or employee, or an agent designated by him or her to receive service of process.

NRCP 4.2(d)(2) (emphasis added). NRCP 4.2(d)(6) further provides that "[t]he court must allow a party a reasonable time to cure its failure to . . . serve a person required to be served under" subsection (d)(2) if the party has timely served at least one of the other required parties (i.e., the Attorney General or public employee).

NRCP 4.2(d)(6) does not require a party to file a motion to take advantage of this cure period. Indeed, the "reasonable time to cure" does not hinge on the failure to timely serve, but rather on the failure to serve the appropriate individuals. While NRCP 4.2(d)(6) does not explicitly state whether a party may take advantage of the cure period after the generally applicable 120-day service period under NRCP 4(e)(1) has expired, the need for additional time to cure service defects only makes sense if the period supplements, or applies after, the 120-day service period. If we were to interpret NRCP 4.2(d)(6) to apply only when the generally applicable service period has not expired, we would render NRCP 4.2(d)(6) superfluous

SUPREME COURT
OF
NEVADA

(O) 1947A

because a party would still have time to cure the defect in service by effectuating proper service within the 120-day period under NRCP 4(e). However, we avoid interpretations that render language meaningless or superfluous. *See Great Basin Water Network v. Taylor*, 126 Nev. 187, 196, 234 P.3d 912, 918 (2010).

Moreover, NRCP 4.2(d)(6)'s cure period implicitly acknowledges the unique, and potentially confusing, dual-service burden imposed on a plaintiff who brings a lawsuit against a public employee for acts related to employment. *Compare* NRCP 4.2(d)(2)(A)-(B), *with* NRCP 4.2(a) (requiring service only on a singular individual to serve a public employee if the lawsuit is related to acts outside of employment). Additionally, accomplishment of at least one service requirement ensures that either the individual defendant or the individual defendant's counsel (i.e., the Attorney General) has notice of the lawsuit, thereby rendering the other service requirement less critical. In such circumstances, additional time beyond the 120-day service period to perfect the dual-service requirement does not prejudice the defendant, as he or she already has notice individually or through counsel. Thus, NRCP 4.2(d)(6) recognizes the additional dual-service burden for lawsuits against public officers or employees over acts related to their employment by allowing plaintiffs a reasonable time to cure defective service while NRCP 4.2's other provisions do not make this allowance for other lawsuits that do not impose this dual-service requirement.

Accordingly, we conclude that NRCP 4.2(d)(6) requires a district court to "allow" a plaintiff "a reasonable time" to cure his or her failure to complete service on a state official or employee if he or she has served one of the two required service recipients according to the

requirements set forth in NRCP 4.2(d)(2), even where the generally applicable 120-day service period has expired. Our conclusion accords with federal courts' interpretation of the analogous federal rule. *See, e.g.,* *Lawrence v. Las Vegas Metro. Police Dep't*, 451 F. Supp. 3d 1154, 1166 (D. Nev. 2020) ("The Advisory Committee describes the cure provision as requiring that 'a reasonable time to effect service on the United States must be allowed *after the failure is pointed out*.'" (emphasis in original) (quoting Fed. R. Civ. P. 4 advisory committee's note to 2000 amendment)), *appeal dismissed on other grounds sub nom. Lawrence v. Bohanon*, 847 Fed. Appx. 516 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 901 (2022). Moreover, we conclude that NRCP 4(e)'s procedures to request an extension of the service period do not apply to this cure period under NRCP 4.2(d)(6). Applying those principles here, we further conclude that the district court's dismissal of Harris's complaint based on his failure to comply with NRCP 4.2(d)(2) was erroneous.[9] The parties do not dispute that Harris complied with NRCP 4.2(d)(2)(A) within the 120-day period but failed to comply with NRCP 4.2(d)(2)(B) within the 120-day period. Harris's compliance with one of the two service requirements triggered NRCP 4.2(d)(6)'s cure period, which required the court to allow Harris additional, albeit reasonable, time to cure defects in service.[10]

---

[9]Because we conclude that NRCP 4.2(d)(6) required the district court to allow Harris to cure the service defects within a reasonable time, we do not address Harris's alternative argument that the district court abused its discretion in concluding that no good cause existed for Harris's failure to file a timely request or for an extension of the service period.

[10]We decline to consider respondents' arguments that Harris's failure to identify the "Jane Doe" defendants warrants dismissal of all claims

SUPREME COURT
OF
NEVADA

(O) 1947A

16

## CONCLUSION

We conclude that Harris alleged sufficient facts to put respondent Williams on notice of the nature of the § 1983 claim against him and to state such a claim for relief. Harris's allegations that he filed a first-level grievance, which Williams was, by regulation, required to review and answer, he received no medical care for repeated complaints of extreme chest pains over a six-month period, he became debilitated and bedridden by the persistent extreme chest pains, and Williams denied the grievance all support Williams's knowledge and disregard of an excessive risk to Harris's health.

We also conclude that NRCP 4.2(d)(6) requires the district court to allow a plaintiff a reasonable time to cure defects in service, even after the generally applicable 120-day service period under NRCP 4.2(e) expires, if the party has timely fulfilled at least one of the two service requirements under NRCP 4.2(d)(2) for service on public officers and employees sued over acts or omissions relating to their duties or employment, regardless of whether the plaintiff has filed a motion for an extension of time pursuant

---

against them and that Harris's failure to raise the issue on appeal constitutes waiver, because respondents did not raise this argument below in moving to dismiss, and the failure to identify the Doe defendants did not factor into the district court's decision. *See Garcia v. Prudential Ins. Co. Am.*, 129 Nev. 15, 19, 293 P.3d 869, 872 (2013) (noting that this court "generally" does "not address an issue raised for the first time on appeal" (quoting *Durango Fire Prot., Inc. v. Troncoso*, 120 Nev. 658, 661, 98 P.3d 691, 693 (2004))).



to NRCP 4(e)(3). Because Harris timely served the remaining respondents according to NRCP 4.2(d)(2)(A), he was entitled to additional time under NRCP 4.2(d)(6) to comply with the second service requirement under NRCP 4.2(d)(2)(B), despite that the 120-day service period under NRCP 4(e) had passed. We therefore reverse the district court's orders dismissing Harris's complaint and remand for further proceedings consistent with this opinion.

_____, J.
Cadish

We concur:

_____, J.
Silver

_____, J.
Pickering